the Walmart's insiders) attempted to alter the meaning of the term "Walmart Marketplace" to make its synonymous with Walmart.com then used this new definition of Marketplace to whitewash the misleading statements made by McMillon to investors in FY17. See evidence of Walmart's illegal conducts.

451.    Third, the RICO Defendants backpedaled on their original assertions that the rapidly expansion in the total number of Marketplace SKUs on Walmart.com was directly correlated to Walmart's Marketplace GMV growth which drove Walmart's Ecommerce GMV growth and the profitability mix Walmart's Ecommerce business.  The RICO Defendants attempted to alter, mutilate, and/or conceal Walmart's previous misleading statements to impair object's integrity or availability for use in the SEC investigation.

452.    Fourth, as discussed below, the RICO Defendants inserted Beal's altered 11/30/16 email along with the purported Marketplace RIF list in Walmart's OSHA position to assert their affirmative defense.  The RICO Defendants later provided Huynh with a copy of Walmart's OSHA position statement, knowing that once Huynh received it, he would submit it to the SEC. Thus, the RICO Defendants objective was to get Huynh to submit the RICO Defendants altered documents to the SEC to further diminish Huynh's credibility as a whistle-blower. The text below proved that David deRubertis knew of Huynh's meeting with the SEC in early Oct 2017 and that Huynh intended to share the Walmart's OSHA position statement with them.

453.    In short, the RICO Defendants perpetrated the above predicate actions in violations 18 U.S.C. § 1512(c)(1) in order to effectuate prong #2 and Goal A of the WSF Coverup Enterprise's illegal coverup scheme.



**The OSHA Investigation**

454.    As discussed above, the RICO Defendants, specifically, the Law Firm of Payne & Fears and Seth Beal altered Beal's 11/30/16 email then attached the purported Marketplace RIF list then insert them into Walmart's position statement submitted to OSHA. The RICO Defendant perpetrated this illegal act to purportedly assert Walmart's affirmative defense i.e., Walmart terminated Huynh not because he engaged in protected activity but because of legitimately and non-retaliatory reason.

Pattern of Racketeering Activity:  Witness Tampering —Alter, OR Conceal Document or Object in Violation of 18 U.S.C. § 1512(b)(2)(B)

The Elements of 18 U.S.C. § 1512(b)(2)(B)

18 U.S.C. § 1512(b)(2)(B) provides that:

1   (b) Whoever knowingly uses intimidation, threatens, or **corruptly persuades** another per-
2   son, **or attempts to do so**, or engages in misleading conduct toward another person, with
    intent to

3      (2) cause or induce any person to

4   (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity
    or availability for use in an official proceeding.... shall be fined under this title or impris-
5   oned not more than 20 years, or both

6

7                        **The SEC Investigation Process**

8          455.    In continuation with discussion above, the Walmart's participants through the

9   Rescue Squad corruptly persuades another person (other members of the enterprise or co-con-

10  spirators), or attempts to do so, or engages in misleading conduct toward another person

11  (other members of the enterprise or co-conspirators), with intent to cause or induce them to

12

13  alter and/or mutilate documents and/or objects presented to the SEC, Walmart's investors, in-

14  vestment analysts, the Media, politicians, and the American public in order to effectuate

15  prong #2 and Goal A of the WSF Coverup Enterprise' illegal coverup scheme.   Below are ex-

16  amples of the predicate acts of the RICO Defendants.

17      A.    Caused Matthew Boyle, a member of the enterprise and a Bloomberg News Re-
18            porter, to publish alteration of evidence/facts on numerous occasions: 1) Altered evi-
              dence/facts regarding the total number of Marketplace SKUs on Walmart.com in Jun
19            16, 2017, 2) Altered facts and evidence in his 3/15/18 and 3/16/18 articles to pur-
              portedly assert the RICO Defendants' Truth on the Market Defense, and 3) Alter
20            and/or conceal evidence to coverup up Walmart's artificial inflations of Jet.com
21            FY17 and FY18 sales.

22      B.    Caused David deRubertis to file altered fact/evidence regarding the total number of
              Marketplace SKUs on Walmart.com in FY17 in Huynh's 3/15/18 complaint.

23      C.    Caused Francine Mckenna to publish online articles on 9/13/17 with altered fact/evi-
24            dence regarding the new definition the term Walmart's Marketplace.

25      D.    Caused Robert Ohmes to publish investment reports on Walmart with altered
              facts/evidence regarding 1) the total number of SKUs on Walmart Marketplace, 2)
26            Walmart's purported new definition of Walmart Marketplace, and 3 altered facts re-
              garding Jet.com FY17 and FY18 sales.

27

28

E.    Caused William H. Thompson to acknowledge the receipt of Walmart's responses regarding inventory mark down, customer returns, and Marketplace revenue recognition on Aug 7, 2017 to purportedly show that Walmart's responses was acceptable per GAAP.[93]

Pattern of Racketeering Activity:  Conspiracy[94] to Commit 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1512(c)(1); 18 U.S.C. § 1512(b)(2)(B);

18 U.S.C. § 1512(k) provides that:

Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy

456.    The framework below provides a comprehensive set of tools to prove the existence of an agreement among the RICO Defendants of the WSF Coverup Enterprise to engage in conspiracy to violate to engage in conspiracy to violate 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1512(c)(1); 18 U.S.C. § 1512(b)(2)(B) in violation of 18 U.S.C. § 1512(k) in order to effectuate Prong #2 and #3 i.e., Goal A of the WSF Coverup Enterprise' illegal coverup scheme.

---

[93] August 7, 2017, William H. Thompson wrote to Brett Biggs: Dear Mr. Biggs: We have completed our review of your filing. We remind you that the company and its management are responsible for the accuracy and adequacy of their disclosures, notwithstanding any review, comments, action or absence of action by the staff.

[94] A conspiracy is a combination of two or more persons to accomplish a criminal purpose or purposes by concerted action. In other words, a conspiracy is a partnership in crime. It is created by an agreement to commit a crime or crimes. The existence of the agreement may be established by circumstantial evidence. It may be shown by evidence that the alleged conspirators were acting in concert in accordance with a common design, United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Pinkerton v. United States, 328 U.S. 640, 644, 66 S.Ct. 1180, 90 L.Ed. 1489; Mendelson v. United States, 61 App.D.C. 127, 130, 58 F.2d 532; Chadwick v. United States, 6 Cir., 141 F. 225, 241; Craig v. United States, 9 Cir., 81 F.2d 816, 822. Various persons may become members of the conspiracy at different times and may play different roles in it. An individual member of the combination need not be aware of all of its ramifications or be cognizant of the number or identity of all of the other participants. If a person knows of its existence and intentionally takes some part in furthering it, he becomes a member of the conspiracy, Mendelson v. United States, supra; Allen v. United States, 7 Cir., 4 F.2d 688, 699. A conspiracy to commit a crime or crimes is separate and distinct from the substantive offenses

## Legal Framework to Prove the Existence of an Agreement

**Goal** | **To conceal Walmart's $136 Billion Fraud Against Shareholders**
An agreement could be proved through circumstantial evidence that defendants acted together in pursuit of a **common illegal goal**." United States v. Bishop, 1 F.3d 910, 911 (9th Cir.1993) (citation omitted). "

## Concerted and interdependence actions

**Overt acts:** United States v. Alvarez, 837 F2d 1024, 1027 (11th Cir. 1988) (holding that proof of acts committed in furtherance of conspiracy may be sufficient to show knowing participation in conspiracy); United States v. Sarault, 840 F.2d 1479, 1487 (9th Cir. 1988) (holding that overt act need only be concrete step toward carrying out agreement, nor one that actually accomplishes goal of conspiracy); It can be a wholly innocent act in and of itself. See United States v. Masiello, 491 F. Supp. 1154, 1164 (D. S.C. 1980).

| **Concerted Actions** | **Interdependence Actions** |
|---|---|
| An agreement may be either explicit or implicit, and the fact finder may infer an agreement from "a **concert of action**." United States v. Mann, 161 F.3d 840, 847 (5th Cir. 1998). United States v. Sneed, 63 F.3d 381, 385 (5th Cir. 1995) ("the jury may infer an agreement from **concert of action**"). United States v. Reveron Martinez, 836 F.2d 684, 691 (1st Cir. 1988) (holding proof of conspiracy inferable from **concert of activity**). | Cassiere, 4 F.3d at 1015 (holding that agreement can be inferred from "defendants' actions and the **interdependence** of activities and persons involved") (quoting United States v. Boylan, 898 F.2d 230, 241-42 (1st Cir. 1990)); Arutunoff, I F3d at 1116 (holding that agreement can be inferred if "defendant's conduct [is] **interdependent** with the conduct of other conspirators," requiring defendant's activities to "facilitate the endeavors of other conspirators or the venture as a whole") |

**Cover Up** | In U.S. v. Smith 294 F.3d 473 (3d Cir. 2002), the 3rd Circuit found concerted actions to **cover up** the circumstances of a prisoner's death, is sufficient to prove the existing of an agreement, stating other courts of appeals have considered acts of **concealment** relevant to determining whether a conspiracy existed. See, e.g., United States v. Piche, 981 F.2d 706 (4th Cir. 1992); United States v. Bigham, 812 F.2d 943 (5th Cir. 1987); United States v. Davis, 810 F.2d 474 (5th Cir. 1987).

457.    The analyses above showed the existence of an agreement among the RICO Defendants to violate 18 U.S.C. § 1512(k) because the RICO Defendants acted in concert to commit multiple predicate acts and overt acts. These acts were interdependence.  For example, before Matthew Boyle could published his 3/15/18 and 3/16/18 article, David deRubertis had to insert the **$7 Mil customer returns** impact into Huynh's complaint and the PR agencies had to line up all the experts e.g., professor, industry experts, and fund manager to purportedly comment on the immateriality of Huynh's allegations against Walmart's shareholder fraud conducts) in order to effectuate Goal A (i.e., to obtain a "Get Out of Jail Free" Card from the SEC and/or the DOJ).

1  <u>Pattern of Racketeering Activity: Conspiracy to Defraud the United Violation of 18</u>
   <u>U.S.C. § 371</u>

2

3  The Elements of 18 U.S.C. § 371

   18 U.S.C. § 371 provides that:
4
   If two or more persons conspire either to commit any offense against the United States,
5  or to **defraud**[95] the United States, or any agency thereof in any manner or for any pur-
   pose, and one or more of such persons do any act to effect the object of the conspiracy,
6  each shall be fined under this title or imprisoned not more than five years, or both.

7

8      458.    The analyses above showed the existence of an agreement among the RICO

9  Defendants to violate 18 U.S.C. § 371 (defrauding the SEC) because the RICO Defendants

10  acted in concert to commit multiple predicate acts and overt acts and these acts were interde-

11  pendence. For example, before the Walmart Participant could go on an investor/analyst road

12  show to whitewash evidence of Walmart's illegal conducts, David deRubertis must steal and

13  leak the confidential information in Huynh's SEC submission to the Rescue Squad. In short,

14  the RICO Defendants engaged in a conspiracy to defraud the SEC in order to effectuate Goal

15  A i.e., to defraud the SEC in issuing the 4/2/2019 non-enforcement letter against Walmart.

16

17

18

19

20

21

22  [95] The meaning of "defraud" under § 371 is more capacious than its definition at common law
   or in the federal mail and wire fraud statutes. See Dennis v. United States, 384 U.S. 855, 861
23  (1966) (citing Haas v. Henkel, 216 U.S. 462, 479 (1910)); United States v. Rosengarten, 857
   F.2d 76, 78 (2d Cir. 1988). Section 371 reaches beyond "schemes which deprive the govern-
24  ment of money or property" to "any conspiracy for the purpose of impairing, obstructing, or
   defeating *7 the lawful function of any department of Government." United States v.
25  Nersesian, 824 F.2d 1294, 1313 (2d Cir. 1987) (second quoting Dennis, 384 U.S. at 861) (in-
   ternal quotation marks omitted). And, as long as the conspiracy seeks to interfere with a law-
26  ful governmental function, § 371 criminalizes all acts that accomplish that goal "by deceit,
   craft, or trickery, or by means that are dishonest." Nersesian, 824 F.2d at 1313 (citing Ham-
27  merschmidt v. United States, 265 U.S. 182, 188 (1924)).

28

**COMPLAINT – DEMAND FOR JURY TRIAL**

1    Pattern of Racketeering Activity: Obstruction of Justice in Violation of 18 U.S.C. § 1503.

2    The Elements of 18 U.S.C. § 1503

3    The "omnibus clause" of 18 U.S.C. § 1503 provides that:

4    "Whoever . . . corruptly or by threats or force, or by any threatening letter or communica-
     tion, **influences, obstructs, or impedes, or endeavors to influence, obstruct, or im-**
5    **pede,** the due administration of justice, shall be fined not more than $5,000 or imprisoned
     not more than five years, or both."

6
     "[T]he [plaintiff] must establish (1) that there is a pending judicial . . . proceeding consti-
7    tuting the administration of justice, (2) that the defendant knew or had notice of the pro-
     ceeding, and (3) that the defendant acted with the wrongful intent or improper purpose to
8    influence the judicial . . . proceeding, whether or not the defendant is successful in doing
9    so."[96] "[A] defendant does not need to know with certainty that his conduct would affect
     judicial proceedings . . . [i]nstead, the defendant's conduct must only have the natural and
10   probable effect of interfering with the due administration of justice."[97]

11                  **From United States v. Bonds 730 F.3d 890 (9th Cir. 2013)**

12   "18 U.S.C. § 1503 known as the omnibus clause, is comprehensive. We have described it
13   as being "designed to proscribe all manner of corrupt methods of obstructing justice."
     United States v. Rasheed, 663 F.2d 843, 851–52 (9th Cir.1981). The essence of the statute
14   is that it criminalizes conduct **intended to deprive the factfinder of relevant infor-**
15   **mation**. See United States v. Ashqar, 582 F.3d 819, 822–23 (7th Cir.2009)." –

16   In United States v. Rasheed 663 F.2d 843 (9th Cir. 1981), the Ninth Circuit wrote:

17   In United States v. Ryan, supra, we said, in dicta, that "[t]he word `corrupt' in [section
18   1503] means for **an evil or wicked purpose**." United States v. Ryan, supra, 455 F.2d at
     734. Black's Law Dictionary defines "corruptly" to mean with "a wrongful design to ac-
19   quire some pecuniary or other advantage." Black's Law Dictionary 414 (4th ed. rev.
20   1968). We hold that the word "corruptly" <u>as used in the statute means that the act must be
     done with the purpose of obstructing justice.</u> Decisions of other circuits support this posi-
21   tion. United States v. Ogle, 613 F.2d 233, 238 (10th Cir. 1979), cert. denied, 449 U.S.
     825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); United States v. Haas, 583 F.2d 216, 220 (5th
22   Cir. 1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). Using this
23   definition of "corruptly," **the destruction or concealment of documents** can fall within
     the prohibition of the statute. This holding does no violence to our rule that the catch-all
24

     ---

25   [96] United States v. Quattrone, 441 F.3d 153, 170 (2d Cir. 2006).

26   [97] United States v. Kumar, 617 F.3d 612, 620-21 (2d Cir. 2010) (noting that courts afford
     Section 1503 "a generally non-restrictive reading") (internal quotations omitted); see also
27   United States v. Aguilar, 515 U.S. 593, 598 (1995) (noting that "the 'Omnibus Clause' serves
     as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due
28   administration of justice").

**COMPLAINT – DEMAND FOR JURY TRIAL**

provision of section 1503 is limited by the prior specific prohibitions of the statute. <u>The act of destroying or concealing subpoenaed documents is "similar in nature,"</u> Haili v. United States, supra, 260 F.2d at 746, to the enumerated acts. <u>The destruction or conceal-ment of subpoenaed documents results in the improper suppression of evidence,</u> and thus the influencing, obstructing and impeding of judicial proceedings, just as much as does the intimidation of a witness. United States v. Walasek, 527 F.2d 676, 679 n. 11 (3d Cir. 1975).

459.    To effectuate prong #3 of the WSF Coverup Enterprise's illegal coverup scheme, the RICO Defendants engaged in evidence destruction, mutilation, and concealment as well as submitting false declarations to suppress material facts to obstruct Huynh from de-fend himself against Walmart's motion summary judgement.

A.   Fabrication of Seth Beal's 11/30/16 email and RIF list then filed false declaration to purportedly assert that these documents were authentic when they were not.

B.   Destruction of Huynh's outlook calendar appointment for his meeting with Seth Beal on Oct 4 and Oct 18, 2017.

C.   Fabrication of Melvenia Ha's Oct 17, 2016 then filed false declaration to purport-edly assert that these documents were authentic when they were not.

D.   Mutilation of the sent date and time of Huynh's emails by using the UTC time zone versus the PST time zone as stipulated in the ESI Protocol order.

E.   Mutilation of the headers in Huynh's emails to prevent Huynh from using them to defend himself against Walmart's motion for summary judgement.

F.   Fabrication of Beal's 12/13/16 email and RIF list then filed false declaration to pur-portedly confirm their authenticity.

G.   Fabrication of Beal's 12/14/16 email and RIF list then filed false declaration to pur-portedly confirm their authenticity.

H.   Fabrication of Melvenia Ha's purported sexual harassment report and Walmart's Ethic and Compliance purported sexual harassment investigation report created by Audrey Au to support Walmart's legitimate reason for Huynh's termination.

I.   Concealed and suppressed evidence and submitted false declarations to obstruct Huynh from proving that Huynh's role was not eliminated due to the RIF.

J.   Concealed and suppressed approximately 380 pages of documents to prevent Huynh from using them to prosecute his claims against Walmart.

460.    The RICO Defendant obstructed Huynh from submitting material evidence into the records after he submitted his opposition brief in opposition to Walmart's motion for

**COMPLAINT – DEMAND FOR JURY TRIAL**

summary judgment in the following ways. First, after Huynh filed a motion to supplement his opposition brief (DC Dkt. 127) the RICO filed their opposition brief (DC Dkt. 129) to oppose Huynh's motion for leave to supplement his opposition brief even though they knew very well that Huynh was entitled to supplement his opposition brief as afforded by F.R.C.P Rule 56(e).. Second, the RICO Defendants corruptly influenced District Judge Vince Chhabria to never rule on Huynh's motion for leave to supplement (DC Dkt. 127) to obstruct Huynh from submitting material facts into the record in order to defend himself against Walmart's motion for summary judgement. Third, the RICO Defendants corruptly influenced District Vince Chhabria to exploit Huynh's inability to supplement his opposition brief as an excuse to ex-clude material facts Huynh submitting into the record to issue orders granting Walmart sum-mary judgment (DC Dkt. 167) and dismiss all of Huynh's claim (DC Dkt. 168)

461.    To ensure that Huynh would lose his lawsuit against Walmart in a clear and convincing fashion to further mislead the Media, Walmart's investors, investment analysts, the SEC and/or the DOJ, and the American public, the RICO Defendants corruptly influence District Judge Vince Chhabria to obstruct Huynh's access to the court to meaningful defend himself against Walmart motion for summary judgement and to file a motion for reconsidera-tion to appeal District Judge Vince Chhabria's entry of final judgement dismissing Huynh's claims against Walmart.

462.    First, District Vince Chhabria purportedly claimed that Huynh needed his per-mission for leave to file a motion for reconsideration then denied the request in order to ob-struct Huynh from filing his motion for reconsideration as afforded by F.R.C.P Rule 59(e).

463.    Second, District Judge Vince Chhabria made misleading statements regarding the nature of Huynh's Jan 9, 2019 letter to District Judge Vince Chhabria (i.e., it was a motion

**COMPLAINT – DEMAND FOR JURY TRIAL**

for reconsideration when it was not) in order to bypass the District Court's Local Rule 7-2 and 7-3 in order to deny Huynh's motion for consideration on wimp versus on the merit.

464.    Fourth, District Judge Vince Chhabria discriminated against Huynh by not affording Huynh an opportunity to heard for no rational basis during the summary judgement stage.  District Judge Vince Chhabria cancelled the oral argument two days before the schedule time to prevent Huynh from telling his side of the story (i.e., pointing the district court to material facts in the record and/or answer his questions regarding material factual disputes) to defend himself against Walmart's motion for summary judgement.  As the examples above show, District Judge Vince Chhabria frequently afforded other litigants in Huynh's position and their lawyers the opportunities to tell the clients side of the story before ruling on their motion for summary judgement.

465.    Fifth, Vince Chhabria discriminated against Huynh by not following the United States District Court of the Northern District of California's Local Rule 7-2 and 7-3 motion practice to give the parties the opportunity to fully brief their arguments and a meaningful opportunity to be heard before ruling on Huynh's motion for reconsideration.  Instead, District Judge Vince Chhabria denied Huynh's motion for reconsideration 3 days after it was filed. As the examples above show, District Judge Vince Chhabria treated similarly situated litigants the opportunity to be heard fully before ruling on their motion for reconsideration. See X.

466.    After Huynh's filed his amended notice of appeal with the United States Court of Appeals for the Ninth Circuit (DC Dkt. 183), the RICO Defendants caused Huynh's appeal to be denied by the Ninth Circuit's merit panel through factual and legal misrepresentations and improper influences.

**COMPLAINT – DEMAND FOR JURY TRIAL**

467.    First, as discussed above even though the five nefarious ADHD FEHA claims shotgun pleaded by David deRubertis were dismissed with prejudice by District Judge Vince Chhabria (DC Dkt. 84), the RICO Defendants continued cited FEHA discrimination and retaliation claim case law in the briefs they e-filed with the United States Court of Appeals for the Ninth Circuit to impose a higher legal standard for Huynh to survive his appeal against Walmart.

468.    Second, the RICO Defendants made misleading statements of facts and of law in their answering brief opposing Huynh's opening brief in an attempt to obstruct justice to get Huynh's appeal against Walmart denied by the Ninth Circuit.  See COA Dkt. 33 – Huynh's reply brief to Walmart's answering brief.

469.    Third, upon information and belief, after failing to improperly get Huynh's appeal dismissed based on the merit, the RICO Defendants improperly influenced the Ninth Circuit's panel to deny Huynh's appeal with a one paragraph ruling that based on the wrong legal standards i.e., improperly applied the McDonnel Douglas frame work to evaluate and deny Huynh's SOX claim and CA wrongful termination in violation of public policy claims.

470.    In summary, the RICO Defendants' conducts during the Huynh vs Walmart litigation were not limited to a few simple discovery violations,[98] but a consistent pattern of fraudulent and illegal acts perpetrated to effectuate the WSF Coverup Enterprise's common objective of concealing Walmart's $140 Bil fraud against shareholders from Walmart's

---

[98] Sections 1503 and 1512 provide no defense for obstruction or tampering that occurs in a civil suit or in discovery, and courts have created no such exception. United States v. Lundwall, 1 F. Supp. 2d 249, 250, 256 (S.D.N.Y. 1998) (corporate officials who had withheld and destroyed evidence during civil discovery could be prosecuted under § 1503); United States v. LeMoure, 474 F.3d 37 (1st Cir. 2007) (affirming conviction for witness tampering under § 1512 based on pressuring a witness to lie in a civil deposition).

**COMPLAINT – DEMAND FOR JURY TRIAL**

1   shareholders, investment analysts, the Media, the SEC and/or the DOJ, States agencies, poli-

2   ticians, and the American public.  As a result of their illegal acts, the RICO Defendants made

3   a mockery of our adversarial system of justice (a model emulated by people the world over)

4   and suppressed the very motto of our judiciary "Equal Justice Under Law" inscribed on the

5   façade of US States Supreme Court building.

6

7

8   

9

10

11

12

13

14

15

16

17

18

19   "Equal Justice Under Law Is Not Merely A Caption On The Facade Of The Supreme Court
20   Building; It Is Perhaps The Most Inspiring Ideal Of Our Society. It Is One Of The Ends For
     Which Our Entire Legal System Exists . . . It Is Fundamental That Jus-tice Should Be The
21   Same, In Substance And Availability, Without Regard To Eco-nomic Status." – Justice
     Lewis F. Powell, Jr., U.S. Supreme Court Justice.
22

23

24       471.    Criminal laws exist to punish such conduct in order to "protect the integrity of

25   the court and the due administration of justice." United States v. Lundwall, 1 F. Supp. 2d

26   249, 256 (S.D.N.Y. 1998) as well as proper administration of US governmental Agency pro-

27   ceedings.  Application of these criminal statutes here is especially appropriate because

28

                                               311
                           **COMPLAINT – DEMAND FOR JURY TRIAL**

1   Huynh produced the full scope of the RICO Defendants' corrupted and criminal conducts in

2   pursuit of the WSF Coverup Enterprise's common purpose. The "numerous prudential rea-

3   sons [for which] prosecutors might avoid" prosecuting civil discovery abuses do not mean

4   that "§ 1503 precludes their doing so." Id. at 254. The Second Circuit has repeatedly affirmed

5   RICO convictions based on the corruptness of a lawyer's actions in civil litigation. See

6   United States v. Eisen, 974 F.2d 246 (2d Cir. 1992); United States v. Teitler, 802 F.2d 606

7   (2d Cir. 1986). Here, Defendants did more than file pleadings in a bad case but they commit-

8   ted many RICO predicate crimes which are serious, nefarious and heinous.

9

10  Pattern of Racketeering Activity: Violation of Cal. Pen. Code § 92 – Bribery Statute. This
    is a predicate act under Section 1961(1)(A)

11

12  Cal. Pen. Code § 92 – provides.

13  Every person who gives or offers to give a bribe to any judicial officer, juror, referee, arbi-
    trator, or umpire, or to any person who may be authorized by law to hear or determine any
14  question or controversy, with intent to influence his vote, opinion, or decision upon any
    matter or question which is or may be brought before him for decision, is punishable by
15  imprisonment in the state prison for two, three or four years

16

17  In U.S. v. Frega 179 F.3d 793 (9th Cir. 1999), the Ninth Circuit states:

18  Linkage between a payment and a specific official decision is not required under Califor-
    nia bribery law.[99] California Penal Code §§ 92 and 93 make unlawful bribes intended to
19  influence any matter "which is or may be brought" before a judge for decision. A "bribe"
    is anything of value given or accepted with "a corrupt intent to influence, unlawfully, the
20  person to whom it is given, in his or her action, vote, or opinion, in any public or official
    capacity." Cal. Penal Code § 7(6)[100]. As the California Supreme Court observed in con-
21

22

23

24  [99] The requirements for establishing a violation of the California bribery statutes at issue here,
    California Penal Code §§ 92 and 93, thus differ from those for establishing a violation of the
25  federal anti-gratuity statute, 18 U.S.C. § 201(c)(1) (A). In order to prove a violation of the lat-
    ter statute, the Supreme Court recently held in United States v. Sun-Diamond Growers of Cal-
26  ifornia, 1999 WL 241704 (U.S.), the government must prove a link between a thing of value
    conferred upon a public official and a specific "official act" for or because of which it was
27  given.
    [100] "The word `corruptly' imports a wrongful design to acquire or cause some pecuniary or
28

312

**COMPLAINT – DEMAND FOR JURY TRIAL**

nection with another section of the Penal Code, which similarly makes unlawful the receipt of a bribe intended to affect consideration "of any question or matter, upon which [the official] may be required to act in his official capacity": People v. Diedrich, 182 Cal.Rptr. 354, 360 (1982) (en banc). See also People v. Markham, 64 Cal. 157, 159 806 (1883) (holding that the crime is complete when the payment is corruptly given with intent to influence the *806 judicial officer on any matter that may by law come before him in his official capacity, whether or not it ever does).

472.    Even though, Huynh didn't have direct evidence at this time to proves that 1) the RICO Defendants communicated via US mails or the wire's transmission facilities  with District Judge Vince Chhabria and Magistrate Judge Sallie Kim to corruptly influence them to consistently rule in Walmart's favor in order to effectuate the WSF Coverup Enterprise' illegal coverup scheme, and 2) the RICO Defendants conferred thing of value upon District Judge Vince Chhabria and Magistrate Judge Sallie Kim to influence the outcome of their rulings, Huynh strongly believes that this information is in the RICO Defendants' possession and will be discoverable during discovery.

473.    However, as discussed above there was plenty of circumstantial evidence that proved that District Judge Vince Chhabria and Magistrate Judge Sallie Kim consistently rules in Walmart's favor. As the popular saying goes "There ain't no such thing as a free lunch"[101]. Therefore, in order for District Judge Vince Chhabria and Magistrate Judge Sallie Kim to rule consistently in Walmart's favor, it was more likely than not that the RICO Defendants offered them something of value in exchange for the favorable rulings.

---

other advantage to the person guilty of the act or omission referred to, or to some other person." Cal. Penal Code § 7(3).
[101] https://en.wikipedia.org/wiki/There_ain%27t_no_such_thing_as_a_free_lunch

**COMPLAINT – DEMAND FOR JURY TRIAL**

Pattern of Racketeering Activity: Violation of 18 U.S.C. § 201(b)(1):

18 U.S.C. § 201(b)(1) provides that:

(b) Whoever

(1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official[102] or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent

(A) to influence any official act; or

(B) to influence such public official or person who has been selected to be a public official **to commit or aid in committing**, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(C) to induce such public official or such person who has been selected to be a public official **to do or omit to do any act in violation** of the lawful duty of such official or person;

474.   Even though, Huynh didn't yet have direct evidence at this time to proves that 1) the RICO Defendants communicated to William H. Thompson (SEC official), Mark Marchione (OSHA official), and Jonelle Dunn (OSHA official) via US mails or the wire's transmission facilities to corruptly influence these federal officials to acted favorably toward Walmart Inc. i.e., obstructing the SEC and OSHA proceedings, and 2) the RICO Defendants conferred thing of value upon William H. Thompson (SEC official), Mark Marchione (OSHA official), and Jonelle Dunn (OSHA official) to corruptly influence them to act in Walmart's favors, Huynh strongly believes that this information is in the RICO Defendants' possession and will be discoverable during discovery.

---

[102] the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

314

**COMPLAINT – DEMAND FOR JURY TRIAL**

475.    However, as discussed above there was plenty of circumstantial evidence which proved that William H. Thompson (SEC official), Mark Marchione (OSHA official), and Jonelle Dunn (OSHA official) performed acts in their official capacity at the RICO Defendants' directions which empowered them to effectuate the WSF Coverup Enterprise's common purpose. As the popular saying goes "There ain't no such thing as a free lunch". Therefore, for the three federal officials above to act in Walmart Inc.'s favor, it was more likely than not that the RICO Defendants offered them something of value in exchange for the favorable actions.

Pattern of Racketeering Activity: Violation section 18 U.S.C. § 1952(a)(3) of the Travel Act (18 U.S.C. § 1952) in Violations of Cal. Pen. Code § 92 (California) and 118 U.S.C. § 201(b)(1) (Federal) Bribery Statutes[103]

The Elements of 18 U.S.C. § 1952(a)(3)

18 U.S.C. § 1952(a)(3): Elements of Travel Act violation include: (1) use of the "mail or any facility in interstate or foreign commerce," (2) with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," followed by (3) performance of or an attempt to perform an act of promotion, management, establishment, carrying on, or facilitation of the enumerated unlawful activity"

"Unlawful activity" is defined in Criminal Code Section 1952(b)(2) as, inter alia, extortion, **bribery**, or arson in violation of the laws of the State in which committed or of the

---

[103] The short answer is that RICO explicitly makes it unlawful to agree to conduct an enterprise through predicate acts of state criminal violations, such as bribery. 18 U.S.C. § 1961(1)(A). As we recently noted: That RICO embodies a fundamental federal policy can scarcely be disputed. . .. RICO represents a fundamental choice by Congress to employ the heavy artillery of federal law against a variety of organized criminal endeavors involving security fraud, wire fraud, and bribery.
Govett Am. Endeavor Fund Ltd. v. Trueger, 112 F.3d 1018, 1021-22 (9th Cir. 1997). Moreover, we have often affirmed RICO convictions involving bribery of state officials, see, e.g., Jackson, 72 F.3d at 1373 (bribery of state senator); United States v. Dischner, 974 F.2d 1502, 1506-08 (9th Cir. 1992) (bribery of a mayor), as have other circuits, see, e.g., United States v. Griffith, 85 F.3d 284, 288 (7th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 272 (1996) ("[b]ribery of local . . . officials is just the sort of corruption connoted by the term `racketeering'"), and the United States Supreme Court, see Salinas v. United States, 118 S.Ct. 469, 472-73 (1997) (upholding RICO conspiracy convictions of deputy who accepted bribes from prisoners in county jail).

315

**COMPLAINT – DEMAND FOR JURY TRIAL**

**United States**.  The term "State" includes a **State of the United States**, the District of Columbia, and any commonwealth, territory, or possession of the United States.

476.    As discussed above, the RICO Defendants committed predicate acts in violation of 18 U.S.C. § 201(b)(1) and Cal. Pen. Code § 92 in order to effectuate the WSF Coverup Enterprise's fraudulent scheme.  Even though, Huynh currently doesn't possess direct evidence of communications between the RICO Defendants and the five federal officers discussed above, Huynh strongly believes that this information will be discoverable during discovery to prove that the RICO Defendants violated 18 U.S.C. § 1952(a)(3).

Pattern of Racketeering Activity: Money Laundering in Violation of 18 U.S. C. § 1956(a)(2)(A).

477.    On information and believes, the RICO Defendants i.e., the Walmart Participants, Walmart Inc., the Rescue Squad, and the Law Firm of Gibson Dunn Crutcher, and other Doe(s) on multiple occasions have knowingly caused the transportation, transmission, and/or transfer of funds from Bentonville, AR, to the Rescue Squad ( California and/or Washington DC) who in turn, directly and/or through third parties to transfer fund to the other RICO Defendants and/or their Co-conspirators via the wire with the intent that those funds be used to promote the carrying on of unlawful activity, including but not limited to violations of 18 U.S.C. §§ 1341, 1343, 1512(c)(2), 1512(c)(1); 1512(b)(2)(B), 1512(k), 1503, 371, 201(b)(1), California. Pen. Code § 92 1952(a)(3), and 1956 (a)(2)(A), such as the stealing and leaking of the confidential and non-public information in Huynh's SEC submission to obstruct the SEC investigation into Walmart's illegal conducts, the obstruction of the OSHA and SEC investigations perpetrated by Mark Marchione, Jonelle Dunn, and William H. Thompson and District Vince Chhabria's dismissal of Huynh civil complaint against Walmart Inc.

**Damages and Injuries Caused by RICO Defendants**

478.    Each of the RICO Defendants has engaged in multiple predicate acts, as described above. The conduct of each of the RICO Defendants constitutes a pattern of racketeering activity within the meaning of U.S.C. § 1961(5).

479.    Huynh was injured in his property by reason of the RICO Defendants' violations of 18 U.S.C. § 1962(c) which included but not limited to the following: 1) loss of Huynh's claim to his SEC award, 2) loss of Huynh's claim to his civil lawsuit against Walmart, 3) damaged to Huynh's personal and profession reputation, and 4) costs to appeal District Judge Vince Chhabria's dismissal of Huynh's complaint against Walmart.

480.    Further, as a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.

481.    Defendants' conduct was a substantial factor in causing that harm. The above-described acts of Defendants, including by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

482.    Pursuant to 18 U.S.C. § 1964(c), Huynh is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

**CLAIMS FOR RELIEF**
**SECOND CLAIM FOR RELIEF**
(Violations of RICO, 18 U.S.C. § 1962(d))
(Against All RICO Defendants)

**Legal Elements of an 18 U.S.C. § 1962(d) Claim**

Under 18 U.S.C. § 1962(d), it is unlawful for any person to conspire to violate subsections (a), (b), or (c) of RICO. 18 U.S.C. § 1962(d).

The essential elements of a § 1962(d) conspiracy include: (1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities. Salinas v. United States, 522 U.S. 52, 66 (1997); Rose v. Bartle, 811 F.2d 331, 366 (3d Cir. 1989). Because there is no requirement of some overt or specific act, the RICO conspiracy provision is even more comprehensive than the general conspiracy offense. Salinas, 522 U.S. at 63. Thus, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001); see also Salinas, 522 U.S. at 64 ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators."); Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. Appx. 811, 818 (3d Cir. 2004) (adopting Smith standard). "In certain circumstances, a defendant may be held liable under § 1962(d) even where its own actions would not amount to a substantive RICO violation." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 372 (3d Cir. 2010). Nonetheless, "[u]nderlying a § 1962(d) claim is the requirement that plaintiff must show that defendants agreed to the commission of a `pattern of racketeering.

483.    Huynh realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

484.    The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

485.    Using the framework above to prove the existence of an agreement to engage in a conspiracy and the specificity of the RICO Defendants' commission of the illegal predicate acts, it was more probable than not RICO Defendant had an agreement in place to violate

318
**COMPLAINT – DEMAND FOR JURY TRIAL**

18 U.S.C. § 1962(d) for several reasons. First, the RICO Defendants and they had the common purpose of coverup Walmart's 140 Bil fraud against shareholder. To achieve this common purpose and the RICO committed various illegal predicate acts to effectuate a six-pronged coverup scheme discussed above. The predicate acts and/or overt acts were interdependence for example in order for the Walmart Participants to engage in the whitewash campaign, David deRubertis must steal and leak the specific allegations in Huynh's SEC submission regarding Walmart's illegal conducts. the RICO Defendants also engaged in predicate acts and over acts to conceal (prong #4 – Coverup the Coverup) the existing of WSF Coverup Enterprise's fraudulent coverup scheme. In short, the above analysis proved that it was more likely than not that the RICO Defendants entered in an agreement to conspire to violated 18 U.S.C. § 1962(c).

486.     Additionally, due to the high level of coordination and interdependency of the predicate acts and over acts perpetrated by the RICO Defendants, it was more likely than not that RICO Defendants (specifically the Walmart Participants) had knowledge of the WSF Coverup Enterprise's activities.

487.     In short, there was an agreement among the RICO Defendants to conspire to participate in the management and/or operation of the WSF Coverup Enterprise for the common purpose of covering up Walmart's $140 Bil fraud against shareholders and to ensure a criminal and civil risk-free future for the RICO Defendants. Therefore, the RICO conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

488.     As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Huynh has been injured in his business and properties which include but not limited to 1) loss of Huynh's claim to his SEC award, 2) loss of

**COMPLAINT – DEMAND FOR JURY TRIAL**

Huynh's claim to his civil lawsuit against Walmart, 3) damaged to Huynh's personal and pro-
fession reputation, and 4) costs to appeal District Judge Vince Chhabria's dismissal of
Huynh's complaint against Walmart.

489.    Further, as a direct and foreseeable result of the aforesaid acts of said Defend-
ants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and
special damages and all appropriate compensatory relief.

490.    Defendants' conduct was a substantial factor in causing that harm. The above-
described acts of Defendants, including by and through their managing agents, officers, or di-
rectors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional man-ner
in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights.
Such acts were despicable and constitute malice, fraud, and/or oppression. Plaintiff requests
an assessment of punitive damages against Defendants in an amount to be assessed at time of
trial.

491.    Pursuant to 18 U.S.C. § 1964(c), Huynh is entitled to recover treble damages
plus costs and attorneys' fees from the RICO Defendants.

**CLAIMS FOR RELIEF**
**THIRD CLAIM FOR RELIEF**
(Bivens Actions)
(Against All RICO Defendants)

492.    According to the Ninth Circuit Court of Appeal, a Bivens Action is the
"federal official analog" of 42 USC 1983 claim i.e., one just replaces "state official" with
"federal official". [104]  Additionally, the "Fourteenth Amendment" needs to be replaced
with the "Fifth Amendment".  While the Equal Protection Clause itself applies only to

---

[104] The legal framework for 42 USC 1983 and Bivens Action claims were extracted from the
Ninth Circuit Section 1983 outline.  https://cdn.ca9.uscourts.gov/datastore/up-
loads/guides/section_1983/Section%201983%20Outline%202018%20-%20WESTLAW.pdf
320
**COMPLAINT – DEMAND FOR JURY TRIAL**

state and local governments, the Supreme Court held in Bolling v. Sharpe (1954) that the Due Process Clause of the Fifth Amendment nonetheless imposes various equal protection requirements on the federal government via reverse incorporation.  Therefore, the Fifth Amendment offered both due process right and equal protection right.

**Section 1983 provides:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

**Elements of a § 1983 Action**

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); see also Pistor v. Garcia, 791 F. 3d 1104, 1114 (9th Cir. 2015.

493.    The chart below summarized the three-step analysis Huynh used to support his Biven Action claim against the RICO Defendants discussed above.

494.    First, in order to establish that private parties conspired with federal officials to injure the Plaintiff's constitutional rights, the Plaintiff must prove the existence of an agreement among the parties.

**Private Parties**

Generally, private parties are not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 707–08 (9th Cir. 1991); see also Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (explaining that a lawyer in private practice does not act under color of state law). Where a private party conspires with state (federal) officials to deprive others of constitutional rights, however, the private party is acting under color of state (federal) law. See Tower v. Glover, 467 U.S. 914, 920 (1984); Kimes v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996). Dennis v. Sparks, 449 U.S. 24, 27– 28 (1980);

For example, a private party conspires with a federal judge to deprive others of constitutional rights is acting under color of federal law (similar to 42 USC 1983). See Dennis v. Sparks 449 U.S. 24 (1980).

**Framework to Evaluate Biven Action**

**2** **Clearly Established Constitutional Rights**

**2B** **Fifth Amendment Protections**

**3** **Defendants' Over Acts**

- Procedural Due Process
- Substantive Due Process
  - Access to Court
  - Deliberate Fabrication
  - Evidence Suppression
- Equal Protection Class of One

**Causation**
- Causation in fact
- Proximate Cause

**2A** **Properties**

Claim to a Civil Lawsuit

Claim to SEC Whistleblower Reward

**1** **Color of the Law**
- A private party conspires with a federal judge to deprive others of constitutional rights is acting under color of federal law (similar to 42 USC 1983). See Dennis v. Sparks 449 U.S. 24 (1980).
- Under 42 USC 1985(3) and 42 USC 1986, the Plaintiff needs to prove that private parties engaged in conspiracy to deprive his/her constitutional rights.

 **1** **Existence of an Agreement to Conspire**

495.    Based on the framework provided above and the specific predicate acts and/or overt acts perpetrated by the RICO Defendants in order to effectuate their common purpose (i.e., to conceal Walmart's $140 Bil fraud against shareholders), it was more likely than not that there was an agreement among the RICO Defendants to conspire with District Judge Vince Chhabria, Magistrate Judge Sallie Kim, William H. Thompson (An SEC official) and Mark Marchione (An OSHA official) to violate Huynh's constitution rights for three main reasons.  First, the RICO Defendants acted in concert in pursuit of the WSF Coverup Enterprise's illegal common purpose.  Second, the

322

**COMPLAINT – DEMAND FOR JURY TRIAL**

RICO Defendants executed the predicate acts and/or overt acts in a concerted and inter-dependent fashions.  Third, the RICO Defendants engaged in concealment and coverup of their illegal acts (prong #6 i.e., coverup the coverup scheme). In short, the customized analysis above proved that there was an implicit agreement among the RICO Defendants to engage in a conspiracy to cause Huynh's constitutional injuries.

### 2A  Huynh's Clearly Established Right to Properties

496.    First, Huynh's lawsuit against Walmart Inc. Huynh v. Wal-Mart Stores, Inc. et al. Case 3:18-cv-01631-VC is a clearly established constitutional property right.

> A plaintiff has a private property right in his claim of action-i.e., in the right to sue- and in his lawsuit once filed. Indeed, the U.S. Supreme Court has "squarely" held that even an unadjudicated cause of action is constitutional property (Thomas Mer-rill, The Landscape of Constitutional Property, 86 VA. L. REV. 885, 913 (2000)).  In Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982), the Supreme Court con-sidered it "settled" that a cause of action is a species of property"), basing its asser-tion on Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950). Logan further noted that a "tort or discrimination action" is "a property interest.

497.    Second, Huynh's claim to his SEC Whistleblower Award under the SEC Whis-tleblower Award program is a clearly established property interest afforded by Section 15 U.S.C. §78u-6(b)(1) of the Dodd-Frank Act which states.

498.    "A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).  A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. See Grif eth v. Detrich, 603 F.2d 118 (9th Cir. 1979), cert. denied, 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980).

499.    In any covered judicial or administrative action, or related action, the Com-mission, under regulations prescribed by the Commission and subject to subsection (c),

shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to— (A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and (B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

**2B** Rights Under the Fifth Amendment of the US Constitution

### Due Process Protection Under the Fifth Amendment

500.   "[N]or shall any State (Federal Government) deprive any person of life, liberty, or property, without due process of law." We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974), whether the fault lies in a denial of fundamental *846 procedural fairness, see, e.g., Fuentes v. Shevin, 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, e.g., Daniels v. Williams, 474 U.S., at 331 (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

501.   Due process claims may take either of two forms: "procedural due process" or "substantive due process." See generally Hall v. Tawney, 621 F.2d 607, 610-13 (4th Cir. 1980). Procedural due process requires that the procedures provided by the state (federal government) in effecting the deprivation of liberty or property are adequate in light of the affected interest. Substantive due process, however, imposes limits on what a state (federal government) may do regardless of what procedural protection is provided. See Monroe v. Pape, 365 U.S. at 171-72, 81 S.Ct. at 475; Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952)

### Procedural Due Process

502.   Procedural due process rules do not protect persons from the deprivation of life, liberty or property but from the mistaken or unjustified deprivation of life, liberty or

property. Carey v. Piphus, 435 U.S. 247, 259 (1978); Mathews v. Eldridge, 424 U.S. 319, 344 (1976). Fundamental requirements of procedural due process: 1) Notice and a hearing before an impartial tribunal, 2) An opportunity for confrontation and cross examination, 3) A decision based on the record; Fuentes v. Shevin, 407 U.S. 67, 81 (1972); Carey v. Piphus, 435 U.S. 247, 266 – 67 (1978).

503.    An essential right in both criminal and civil proceedings. The neutrality requirement: 1) Helps to guarantee that life, liberty or property will not be taken based on an erroneous or distorted conception of the facts or the law, 2) Preserves both the appearance and reality of fairness by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with the assurance that the arbiter is not predisposed to find against him. Marshall v. Jericho, 446 U.S. 238, 242 (1980); Schweiker v. McClure, 456 U.S. 188, 195 (1982). Applies whenever important decisions turn on questions of fact. Only way to test their testimony is through the right of confrontation and cross-examination. -- Goldberg v. Kelly, 397 U.S. 254, 269 (1970); Greene v. McElroy, 360 U.S. 474, 496 – 97 (1959). The decisionmaker's conclusion must rest solely on the legal rules and evidence adduced at the hearing. To show that this occurred, the decisionmaker should state the reasons for his determination and indicate the evidence he relied upon, although his statement is not required to amount to a full opinion or formal findings of fact and conclusions of law. Goldberg v. Kelly, 397 U.S. 254, 271 (1970)

**Substantive Due Process**

504.    In Collins v. Harker Heights, for example, we said that the Due Process Clause was intended to prevent government officials ""from abusing [their] power, or employing it as an instrument of oppression."" 503 U.S., at 126 (quoting DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S., at 196, in turn quoting Davidson v. Cannon, 474 U.S., at 348).To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience. We first put the test this way in Rochin v. California, supra, at 172-173, where we found the forced pumping of a suspect's stomach enough to offend due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct". In the intervening *847 years we have repeatedly adhered to Rochin's benchmark. See, e.g., Breithaupt v. Abram, 352 U.S. 432, 435 (1957) (reiterating

**COMPLAINT – DEMAND FOR JURY TRIAL**

that conduct that "shocked the conscience" and was so "brutal" and "offensive" that it did not comport with traditional ideas of fair play and decency" would violate substantive due process); Whitley v. Albers, 475 U.S. 312, 327 (1986) (same); United States v. Salerno, 481 U.S. 739, 746 (1987) ("So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience", . . . or interferes with rights "implicit in the concept of ordered liberty") (quoting Rochin v. California, supra, at 172, and Palko v. Connecticut, 302 U.S. 319, 325-326 (1937)).  Most recently, in Collins v. Harker Heights, supra, at 128, we said again that the substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, "poin[t] the way." Johnson v. Glick, 481 F.2d 1028, 1033 (CA2), cert. denied, 414 U.S. 1033 (1973).

**Meaningful Access to Court Is a Substantive Due Process Right**

505. **Right of Access to Court...** "It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir. 1986). *1262 In fact, the right of access to the courts finds support in several provisions of the Constitution including: the Due Process Clause of the Fourteenth Amendment, Wolff v. McDonnell, 418 U.S. 539, 579 (1974), the Equal Protection Clause, Pennsylvania v. Finley, 481 U.S. 551, 557 (1987), the First Amendment, Turner v. Safley, 482 U.S. 78, 84 (1987) (citing Johnson v. Avery, 393 U.S. 482 (1969)), and the Privileges and Immunities Clause of Article IV, see, e.g., Chambers v. Baltimore Ohio R.R., 207 U.S. 142, 148 (1907); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990)

506. **...Is Not Just Physical Access.** Access to courts does not only protect one's right to physically enter the courthouse halls, but also ensures that the access to courts will be "**adequate, effective and meaningful**." Bounds v. Smith, 430 U.S. 817, 822 (1977). Therefore, if a party engages in actions that **effectively cover-up evidence** and this action renders a plaintiff's state court remedy ineffective, they have **violated his right of access to the courts**. See Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) ("To deny such access defendants need not literally bar the courthouse door or attack plaintiffs' witnesses.")

507.    The right of access to the courts is substantive rather than procedural. *347 Its exercise can be shaped and guided by the state, Bounds, 430 U.S. at 825, 97 S.Ct. at 1496, but cannot be obstructed, regardless of the procedural means applied. Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969) ("[I]t is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."); see Daniels v. Williams, 474 U.S. 327, ___, 106 S.Ct. 662, 677, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring in the judgment) ("[I]f the Federal Constitution prohibits a State from taking certain action `regardless of the fairness of the procedures used to implement them,' the constitutional violation is complete as soon as the prohibited action is taken . . . .") (Citation omitted).

508.    Moreover, as discussed above, the essence of the statute (18 U.S.C. § 1503 known as the omnibus clause) is that it criminalizes conduct intended to **deprive the fact-finder of relevant information**. See United States v. Ashqar, 582 F.3d 819, 822–23 (7th Cir.2009)." The act of destroying or concealing subpoenaed documents is "similar in nature," Haili v. United States, supra, 260 F.2d at 746, to the enumerated acts. The destruction or concealment of subpoenaed documents results in the improper suppression of evidence, and thus the influencing, obstructing and impeding of judicial proceedings, just as much as does the intimidation of a witness. United States v. Walasek, 527 F.2d 676, 679 n. 11 (3d Cir. 1975).

509.    Therefore, the act of evidence fabrication, destruction, mutilation, and concealment as well as filing false declaration in the court's docket essentially obstruct a Plaintiff right to meaningful access to court to defend himself/herself against the Defendants' motion for summary judgement.  These types of overt acts violate the Plaintiff's Substantive Right to Due Process.

**Equal Protection Class of One Under the Fifth Amendment**

510.    In Village of Willowbrook v. Olech 528 U.S. 562 (2000), the United States Supreme Court states. "Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been **intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment**. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). In so doing, we

327
**COMPLAINT – DEMAND FOR JURY TRIAL**

have explained that "[t]he purpose of the equal protection clause of the Fourteenth Amend-
ment is to secure every person within the State's jurisdiction against intentional and arbitrary
discrimination, whether occasioned by express terms of a statute or by its improper execution
through duly constituted agents.'" Sioux City Bridge Co., supra, at 445 (quoting Sunday Lake
Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918))".

### Causation Element Under a Biven Action Claim

511.   "In a § 1983 action, the plaintiff must also demonstrate that the defendant's
conduct was the actionable cause of the claimed injury." Harper v. City of Los Angeles, 533
F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must es-
tablish both causation-in-fact and proximate causation." Id.

512.   It is well settled that Bivens actions are simply the federal counterpart to §
1983 claims brought against state officials, see Brown v. Philip Morris, Inc., 250 F.3d 789,
800 (3d Cir. 2001), and because tort law causation analysis serves as the basis for determining
causation in § 1983 actions, see Hector v. Watt, 235 F.3d 154, 160 (3d Cir. 2001) (citing
Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000)), tort law causation must govern our anal-
ysis of this Bivens claim.  This standard of causation "closely resembles the standard 'foresee-
ability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350,
1355 (9th Cir. 1981); see also Stevenson v. Koskey, 877 F.2d 1435, 1438 (9th Cir. 1989) (not-
ing that federal courts turn to common law of torts for causation in civil rights cases).

513.   A person "subjects" another to the deprivation of a constitutional right, within
the meaning of section 1983, if he does an affirmative act, participates in another's affirmative
acts, or omits to perform an act which he is legally required to do that causes the deprivation
of which complaint is made. See Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d
1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).
Moreover, personal participation is not the only predicate for section 1983 liability. Anyone
who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The req-
uisite causal connection can be established not only by some kind of direct personal participa-
tion in the deprivation, but also by setting in motion a series of acts by others which the actor
knows or reasonably should know would cause others to inflict the constitutional injury. 588
F.2d 740, 743–44 (9th Cir.1978) (citation omitted).

514.    A police officer need not have been the sole party responsible for a constitutional violation before liability may attach. "An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting Chuman v. Wright, 76 F.3d 292, 294–95 (9th Cir. 1996)). This theory of liability "does not require that each officer's actions themselves rise to the level of a constitutional violation." Id. (quoting Boyd v. Benton County, 374 F.3d 773, 780 (9th Cir. 2004)). Instead, liability may attach if the officer has "some fundamental involvement in the conduct that allegedly caused the violation." Id. A theory of integral participation thus comports with general tort principles of causation applicable to a § 1983 action: "[G]overnment officials, like other defendants, are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions." Stoot v. City of Everett, 582 F.3d 910, 926 (9th Cir. 2009). See Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that allegations that school officials knew of alleged violation and failed to take corrective action were sufficient to state a claim); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) (concluding that allegations that FBI agents developed a plan and then encouraged another agent to shoot a suspect were sufficient to state a claim); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (concluding that failure to intervene to stop alleged violation could be sufficient to establish liability); Redman v. Cty. of San Diego, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (en banc) (concluding that knowledge of a policy and practice of overcrowding that allegedly resulted in inmate's rape could be sufficient to establish liability), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)

### Chain of Causation and Intervening Force Analysis

515.    In a Civil Rights conspiracy case, the injury and damage must flow from the overt acts ((United States v. Sarault, 840 F.2d 1479, 1487 (9th Cir. 1988) (holding that overt act **need only be concrete step** toward carrying out agreement, nor one that actually accomplishes goal of conspiracy); It can be a **wholly innocent act** in and of itself. See United States v. Masiello, 491 F. Supp. 1154, 1164 (D. S.C. 1980)).

516.    Where the gravamen of the injury complained of is commitment to an institution by court order, this order of the court, right or wrong, is ordinarily the proximate cause of the injury. Various preliminary steps occur before the order is made. These preliminary steps

may range from such matters as filing of petitions to the various clerical and procedural activities which lead to the order. In the ordinary case, the order is made after a hearing in court or after consideration by the court of the supporting documents and evidence. Therefore, the various preliminary steps would not cause damage unless they could be said to be the proximate cause of the injury. In the usual case, the order of the court would be the proximate cause and the various preliminary steps would be remote causes of any *247 injury from imprisonment or restraint under the court order. 268 F.2d at 296-97 (emphasis added). Over time, the law in this area has developed around the general principle <u>that the decision of an independent intermediary "will only constitute an intervening cause if the decision is genuinely free from deception or coercion." Hector, 235 F.3d at 164</u> (citing cases from the Second, Fifth, Seventh, Eleventh, and D.C. Circuits) (Nygaard, J., concurring).

517.    In Egervary v. Young, we recognized that "the actions of a judicial officer may sever the chain of causation" between the wrongful act of a party who appeared before the judicial officer and the harm that befell another as a result. Id. at 246. In Egervary, we distinguished between a party's misrepresentations of law and **misrepresentations of fact** in determining whether the chain of causation was broken[105]. A judge's error of law is generally sufficient to sever the chain of causation, even if a party misrepresented the state of the law to the judge, because "it is axiomatic that, in any given case, the responsibility for determining the governing law and procedures lies with the judge." Id. at 249. However, because a judge depends on the party appearing before her to honestly state the facts relevant to the judge's decision, a judge's actions do not sever the chain of causation where the party makes "an inadequate or false representation of the factual basis upon which the legal ruling depended."

---

[105] In Huynh v. Wal-Mart Stores, Inc. et al., the RICO Defendants were so desperate to get Huynh's case against Walmart dismissed in a clear, convincing, and powerful fashion in order to reinforce the "Get Out of Jail Free" Card they got from the SEC that they not only misrepresented the facts (engaging in evidence fabrication, destruction, mutilation, and concealment as well as committing perjuries) and the misrepresented the laws (shotgun pleaded five frivolous and nefarious ADHD FEHA claims to impose the McDonnel Douglas framework upon Huynh's SOX claims against Walmart) but they also offered things of value (**to be discovered during discovery**) to District Judge Vince Chhabria and Magistrate Judge Sallie that turned them into an **instrument of oppression** to serve in the WSF Coverup Enterprise.

**COMPLAINT – DEMAND FOR JURY TRIAL**

**3**    **The RICO Defendant Overt Acts and Proximate Cause to Huynh's Injuries**

518.    As discussed above, Theodore Boutros, Eugene Scalia, and Rachel Brass were at the top of the WSF Coverup Enterprise (they were the leaders of the Rescue Squad). They acted as the Walmart Participants' trusted legal advisor to help develop strategies and tactics as well as overseeing the execution of the WSF Coverup Enterprise' illegal coverup scheme in order to achieve the RICO Enterprise' common purpose.  In some instances, they directly involved in the day-to-day operation of the RICO Enterprise for example offering things of value and/or improperly influence to the Federal Judges and Federal Officials due to their connections and/or reputation in the legal communities to act in Walmart's favor. Below are overt acts perpetrated by these RICO Defendants to deprive Huynh to his claim to his lawsuit against Walmart and his claim to his SEC Whistleblower Reward as afforded by the law.

**Violation of Huynh's Substantive Due Process Causing Injuries to Huynh's Properties**

519.    Jointly developed the "Truth on the Market" Defense with the Walmart Partici-pant then caused/directed the other RICO Defendants to operationalize them.

A.    Caused Walmart's executives and others (Robert Ohmes and Matthew Boyle etc.) to engage in the whitewashing campaign.

B.    Ordered David deRubertis to exploit Huynh's 3/15/18 complaint as a platform to whitewash evidence of Walmart's misleading statements.

C.    Ordered the other RICO Defendants and/or their Co-conspirators e.g., PR agencies and journalists to execute the "Truth on the Market" Defense on 3/15 and 3/16/18.

D.    Worked jointly with Orrick Herrington & Sutcliffe LLP, to jointly package factual misrepresentations then presented them to the SEC in order to improperly influence the SEC to issue Walmart the non-enforcement letter on 4/2/19.

E.    Developed the "Nuts & Sluts" strategy (prong #3 of the coverup plan) then ordered others execute it to diminish Huynh's credibility as a whistleblower.

F.    Upon information and belief, these RICO Defendants leveraged the list of SEC wit-ness that David deRubertis leaked during the GO 71 disclosures to Walmart to coach and influence the testimonies of these witnesses to present factual misrepresenta-tions to the SEC.

520.    Jointly developed the strategy and execution plan for prong #3 with the Walmart Participants to misrepresent the facts and the Laws to attempt to get Huynh's civil

case against Walmart dismissed in a clear, convincing, and powerful fashion. Then caused other to executed this plan.

A.   Directed David deRubertis to shotgun pleaded the five frivolous and nefarious ADHD FEHA claims against Walmart.  Then get the other RICO Defendants to exploit these claims to improperly gather Huynh's psychiatrist and personnel records then misrepresented the facts and laws (imposed the McDonnel Douglas framework to assess Huynh's SOX Claim.

B.   Developed the evidence fabrication, destruction, mutilation, and concealment campaign then caused the other RICO Defendants to execute this plan e.g., cause David and Kari deRubertis, Garen Nadir, Doug Kasales, and Kathy Vonlindern to destroy evidence the outlook appointment calendar of Huynh's meeting with Seth Beal on Oct 4 and 18, 2016.

C.   E-filed factual and legal misrepresentations in the United States Court of Appeals for the Ninth Circuit's Dockets (i.e., Walmart's answering brief) to support Walmart's motion for summary judgement to corruptly influence the denial of Huynh's appeal.

521.   Offered Things of Value and/or Improperly Influenced District Judge Vince Chhabria and Magistrate Judge Sallie Kim to Turn them Into an Instruments of Oppression.

A.   Caused District Judge Vince Chhabria to never ruled on Huynh's motion for leave to supplement to file material facts into the record in order to defend himself against Walmart's motion for summary judgment.

B.   Caused District Judge Vince Chhabria to obstruct Huynh from filing his motion for reconsideration to appeal the dismissal of his complaint.

C.   Caused District Vince Chhabria to immediately denied Huynh's motion for reconsideration without forcing Walmart to file an opposition brief within three days after Huynh filed his motion for reconsideration.

D.   Caused District Judge Vince Chhabria to abruptly cancel the oral argument for summary judgement 2 days before the scheduled date.

E.   Caused District Judge Vince Chhabria to suppress material facts Huynh submitted in various court filings to rule that Huynh offered no evidence of pretext. For example, District Vince Chhabria didn't consider the material facts that Walmart hired 10 people right smack in the middle the purported Marketplace RIF.  See DC Dkt 178.

F.   Caused the United States Court of Appeals for the Ninth Circuit's merit panel to impose the improper and burdensome McDonnel Douglas upon Huynh's SOX case then suppressed the material evidence Huynh filed in the record with the court below to issue a one paragraph ruling to deny Huynh's appeal. See X.

522.     Theodore Boutros, Eugene Scalia, and Rachel Brass corruptly influenced District Judge Vince Chhabria to bypass the United States District Court of the Northern District of California's Local Rule on Moton Practice to deprive Huynh of his due process right.

A.     Caused District Judge Vince Chhabria to bypass the Local Rules governing the Motion Practice to never rule on Huynh's motion for leave to supplement to file material facts into the record to support the factual assertions in Huynh's opposite brief in order to defend himself against Walmart's motion for summary judgement.

B.     Caused District Judge Vince Chhabria to bypass the Local Rules governing Motion Practice to deny Huynh's motion for reconsideration afforded under F.R.C.P Rule 59(e) within three days after it was filed without even requiring Walmart to file their opposition brief.

523.     Theodore Boutros, Eugene Scalia, and Rachel Brass violated Huynh's constitution right to equal protection under the Fifth Amendment by causing and/or directing District Judge Vince Chhabria to discriminate against Huynh for no rational basis except to serve as an instrument of oppression to effectuate the WSF Coverup Enterprise's illegal coverup scheme.

A.     Caused District Judge Vince Chhabria to suppressed the material facts in the records which Huynh relied on to oppose Walmart's motion for summary judgement.  District Judge used the lack of evidence as an excuse to grant Walmart summary judgement and dismissed all of Huynh's claim against Walmart. For example, District Judge Vince Chhabria purported stated in his ruling "Indeed, Huynh has produced zero evidence of pretext". See DC Dkt. 167 at 5

B.     Caused District Judge Vince Chhabria to deny Huynh's motion for reconsideration to appeal District Judge Vince Chhabria entry of final judgement against Huynh only three days after it was file for no rational basis.  As a matter of fact, District Judge Vince Chabbria lied about the nature of Huynh's 1/19/20 letter (DC Dkt. 170) to deny Huynh's motion within going through the motion practice processed.  District Judge Vince Chhabria treated Huynh differently compare to similarly situated litigants that appear before his court.

**COMPLAINT – DEMAND FOR JURY TRIAL**

524.    The junior member of the Rescue Squad i.e., Chris Wilson, Ryan Stewart, and Susanna Schuemann, participated in the operations of the Enterprise to execute some of the overt acts as well as coordinating and supervising the other RICO Defendants to carry out the operations of the WSF Coverup Enterprise.  Thus, the overt acts perpetrated by these Defendants were done to effectuate the strategy and implementation plans dictated by the leaders of the Rescue Squad as well as that of the Walmart participant.  Below are some key over acts (not exhaustive but more than enough for Huynh to prove the causation element of his Biven Actions) committed by these Defendants in furtherance of the WSF Coverup Enterprise's illegal coverup scheme.

525.    For example, Ryan Stewart, Chris Wilson, and Susanna Schuemann directed Renee Quezada at Lighthouse Global to fabricate Beal's 11/30/16 and RIF list, Melvenia Ha's Oct 17 interview notes.  They also coordinated and directed David and Kari deRubertis, Garen Nadir, Doug Kasales, and Kathy Vonlindern to destroy Huynh's outlook calendar meeting with Beal on Oct 4 and Oct 18 of 2016, mutilate the headers of Huynh's outlook emails, and shifted the time in Huynh's documents by 8 hours in order to obstruct Huynh from using this evidence to defending himself against Walmart's motion for summary judgement.

526.    Ryan Stewart, Chris Wilson, and Susanna Schuemann also e-filed fabricated documents (e.g., Audrey Au fabricated investigation report which purportedly substantiate the false sexual harassment charges against Huynh) and false declarations (Beal's and Ricetti false declaration that Huynh's role was eliminated when in facts it was not) to supported Walmart's motion for summary judgement to give District Judge Vince Chhabria as an excuse to dismiss Huynh's claim in a spectacular fashion.

527.    The deRubertis Law Firm Participant i.e., David and Kari deRubertis, and Garen Nadir participated in the operations of the Enterprise by following the orders and directions of the Rescue Squad to committed overt acts to effectuate the WSF Coverup Enterprise's common purpose and in the process, they cause Huynh's injuries to his properties. Below are some key over acts (even though they were not exhaustive they were enough for Huynh to prove the causation element of Huynh's Biven Action claim.

A.   As discussed in paragraph X, David deRubertis misrepresented the facts about the $7 Mil customer return impact and the definition of Walmart's Marketplace to whitewash evidence of Walmart's illegal conducts.

B.   David deRubertis delayed filing Huynh's complaint by 3 months to cause the other RICO Defendants to coverup Walmart's inflation of Walmart's Quarterly Ecommerce Sales grow to obstruct the SEC investigation and influence the outcome of the SEC investigation.

C.   David and Kari deRubertis, Garen Nadir, Doug Kasales, and Kathy Vonlindern engaged in evidence destruction and mutilation to prevent Huynh from using them to defend himself against Walmart.

D.   David and Kari deRubertis leaked the list of SEC witnesses to the Rescue Squad during the GO 71 disclosure to cause the other RICO Defendants to communicate factual misrepresentations to the SEC to obstruct and/or influence the SEC to issue the Get Out of Jail Free Card to Walmart.

E.   David deRubertis and Garen Nadir acted under the orders and directions of the Rescue Squad to intentionally omit system metadata fields from the Joint Stipulation ESI Protocol order DC Dkt. 136 to obstruct Huynh from authenticating and impeaching Walmart' purported material facts (e.g., Beal's fabricated 11/30/16 and RIF list and Melvenia Ha's fabricated Oct 17 interview note) to defend himself against Walmart's motion for summary judgement.

528.   In summary, David and Kari deRubertis, Garen Nadir, Doug Kasales, and Kathy Vonlindern committed the over acts above to effectuate the WSF Coverup Enterprise but in the process, they caused injuries to Huynh's properties by violated Huynh's substantive due process right and equal protection right afforded by the Fifth Amendment of the US Constitution.

529.   Walmart's Board of Directors e.g., Greg Penner, Rob Watson, and Timothy Flynn knew about WSF Coverup Enterprise Plan (after Huynh emailed these Defendants on Dec 13, 2018, Rachel Brand announced Jay Jorgensen's exit from Walmart the very next day. Subsequently, beginning in early 2019, the Walmart participants engaged in the reverse whitewashing campaign).  These Defendants caused injuries to Huynh's properties by not intervening to stop the other RICO Defendants illegal acts.  See Preschooler II v. Clark Cty.

**COMPLAINT – DEMAND FOR JURY TRIAL**

1   Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that allegations that school

2   officials knew of alleged violation and failed to take corrective action were sufficient to state

3   a claim); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (concluding that failure to

4   intervene to stop alleged violation could be sufficient to establish liability).

5

6       530.    Similarly, the other Walmart Participants (i.e., Doug McMillion, Brett Biggs,

7   Marc Lore, Rachel Brand, Jeff Gerhart, Jay Jorgensen, Karen Roberts, Kerry Kotous, and

8   Doe(s)) were the leaders of the WSF Coverup Enterprise.  They jointly developed the WSF

9   Coverup Enterprise's illegal coverup scheme.  As a matter of facts, Doug McMillon, Brett

10  Biggs, and Marc Lore were also engaged in the whitewashing scheme to make factual misrep-

11  resentations to mislead the SEC and/or the DOJ, Walmart's investors, investment analysts, the

12  Media, politicians, and the America public in order to effectuate the RICO Enterprise's illegal

13  coverup scheme.

14

15      531.    As discussed above, the other RICO Defendants namely, the Unknown PR

16  Agencies (to be discovered during discovery), Matthew Boyle, Bloomberg News' Reporter.

17  Lighthouse Global (Renee Q, and Doe(s)), William Thompson (SEC officials), and Doe(s)

18  were integral participants in the conspiracy with the other RICO Defendants to commit overt

19  acts which they knew or should have known will cause injuries to Huynh's properties.

20

21      532.    In summary, each of the RICO Defendant knowingly participated in a conspir-

22  acy with federal officials and has engaged in overt acts, as described above in furtherance of

23  the WSF Coverup Enterprise's illegal common purpose i.e., to conceal Walmart's $140 Bil

24  fraud against shareholders.  As a foreseeable result of these overt acts, Huynh was injured in

25  his properties which include but are not limited to the loss of Huynh's SEC Whistleblower

26

27

28

award and the loss of Huynh's civil lawsuit against Walmart, Huynh's personal and profes-

sion reputation, and the costs to appeal District Judge Vince Chhabria's dismissal of Huynh's

complaint with the United States Court of Appeals for the Ninth Circuit.

533.   Furthermore, the overt acts committed by the RICO Defendants in furtherance

of the WSF Coverup Enterprise's common purpose, caused injuries to Huynh's constitutional

properties through the violations of Huynh's rights under the Fifth Amendment of the US

Constitution. Namely, The RICO Defendants robbed Huynh's right to procedural and substan-

tive due process and equal protection under law (class of one).

534.   Further, as a direct and foreseeable result of the aforesaid acts of said Defend-

ants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and

special damages and all appropriate compensatory relief.

535.   Defendants' conduct was a substantial factor in causing that harm. The above-

described acts of Defendants, including by and through their managing agents, officers, or di-

rectors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in

order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights.

Such acts were despicable and constitute malice, fraud, and/or oppression. Plaintiff requests

an assessment of punitive damages against Defendants in an amount to be assessed at time of

trial.

**COMPLAINT – DEMAND FOR JURY TRIAL**

**CLAIMS FOR RELIEF**
**FOURTH CLAIM FOR RELIEF**
(Violations of 42 U.S.C. § 1985(3))
(Against All RICO Defendants)

**Framework to Evaluate a 42 U.S.C. 1985(3) Action**

536.    Section 1985(3) of the Civil Rights Act of 1964 provides a civil remedy for conspiracies to interfere with **constitutionally or federally protected** rights when motivated by invidiously discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

537.    Under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) an act in furtherance of the conspiracy; (3) an intent to deprive any person of the equal protection of, or equal privileges and immunities under, the law; and (4) a resulting injury to a legal right or privilege. See Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 373 (1979) (quoting Griffin v. Breckenridge, 403 U.S. at 102). See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps **otherwise class-based**[106], invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). A mere allegation of conspiracy is insufficient to state a claim. Id. at 676-77

---

[106] In Village of Willowbrook v. Olech 528 U.S. 562 (2000), the Supreme Court wrote: "Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Alle-gheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co., supra, at 445 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918))".

**COMPLAINT – DEMAND FOR JURY TRIAL**

538.   Huynh realleges and incorporates herein by reference each and every fore-going paragraph of this Amended Complaint as if set forth in full.  Specifically, this claim incorporated all the factual allegations in claim No. 1, No. 2, and No.3.

539.   As discussed in paragraph above, Huynh proved that the RICO Defendant entered into an implicit agreement to conspire to commit overt acts in furtherance of the WSF Coverup Enterprise's illegal common purpose.  Furthermore, these overt acts as pleaded above caused (foreseeable that) the Rescue Squad, the Walmart participants, and the other RICO Defendants to submit factual misrepresentations (e.g., fabrication, de-struction, mutilation, concealment and filing false declarations, and evidence whitewash-ing etc.) to the SEC and the United States District Court of the Northern District of Cali-fornia). Ultimately these factual misrepresentations led the SEC to issue Walmart a "Get Out of Jail" Fee card i.e., the SEC stopped their investigation into Walmart's $140 Bil fraud against shareholders for no rational basis if not for the overt acts of each of these RICO Defendants.  Additionally, the GDC Squad and the Walmart Participants submitted factual and legal misrepresentations in support to Walmart's motion for summary judge-ment.  Using these factual misrepresentations (evidence destruction, fabrication, mutila-tion, and concealment as well as filing false declaration), the Rescue Squad and the Walmart participants corruptly influence District Judge Vince Chhabria to discriminate against Huynh to dismiss Huynh's claims against Walmart.  Subsequently, District Judge Vince Chhabria denied Huynh's motion for reconsideration within three days after it was filed by bypassing the United States District Court for the Northern District of California Local Rule 7-2 and 7-3 on motion practice. As discussed above, District Judge Vince Chhabria treated other similarly situated litigants that appeared before him different than Huynh. In short, if not for the overt acts of each of the RICO Defendants above, District

**COMPLAINT – DEMAND FOR JURY TRIAL**

Judge Vince Chhabria would have not deprived Huynh of his right to Equal Protection under the class of one.

540.     The overt acts perpetrated by each and every member of the RICO Defendants caused injuries to Huynh's constitutional properties because these acts lead District Vince Chhabria and the SEC to treat Huynh differently than others for no rational basis.  Therefore, these RICO Defendants violated Huynh's Fifth Amendment right to equal protection under (class of one).

541.     In summary, each of the RICO Defendant knowingly participated in a conspiracy among themselves and other Federal Officials and has engaged in overt acts, as described above in furtherance of the WSF Coverup Enterprise's illegal common purpose i.e., to conceal Walmart's $140 Bil fraud against shareholders.  As a foreseeable result of these overt acts, Huynh was injured in his properties which include but are not limited to the loss of Huynh's SEC Whistleblower award, the loss of Huynh's civil lawsuit against Walmart, damage to Huynh's personal and profession reputation, and the costs to Huynh in appealing District Judge Vince Chhabria's dismissal of his complaint with the United States Court of Appeals for the Ninth Circuit.

542.     Further, as a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.

543.     Defendants' conduct was a substantial factor in causing that harm.  The above-described acts of Defendants, including by and through their managing agents, of-

ficers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

**CLAIMS FOR RELIEF**
**FIFTH CLAIM FOR RELIEF**
(Violations of 42 U.S.C. § 1986)
(Named RICO Defendants)

42 U.S.C. § 1986 provides that:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case. . . . 42 U.S.C.A. § 1986 (West 1981). Thus, § 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and "transgressions of § 1986 by definition depend on a preexisting violation of § 1985. . .." Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Additionally, a § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed. See Perez v. Cucci, 725 F. Supp. 209, 254 (D.N.J. 1989) (citations omitted), aff'd, 898 F.2d 142 (3d Cir. 1990); Chester J. Antieau Gary E. *1296 Bair, Federal Civil Rights Acts § 281 (1980 Supp. 1993).

544.    The "Name Defendants" in this cause of actions are those RICO Defendants who acted at the supervisor level who knew the existence of the WSF Coverup Enterprise's illegal conducts scheme but failed to perform to fulfill their official duties to stop the Huynh's injuries.  The Defendants for this cause of action are: Greg Penner, Rob

1    Watson, Timothy Flynn, Doug McMillion, Brett Biggs, Marc Lore, Rachel Brand, Jeff

2    Gerhart, Jay Jorgensen, Karen Roberts, Kerry Kotous, Theodore Boutros, Eugene Scalia,

3    Rachel Brass, and David deRubertis.

4

5           545.    Huynh realleges and incorporates herein by reference each and every fore-

6    going paragraph of this Amended Complaint as if set forth in full. Specifically, this claim

7    is a derivative of the fourth claim.

8

9           546.    As discussed above, Huynh emailed Walmart's Board of Directors namely

10   Greg Penner, Rob Watson, and Timothy Flynn on Dec 13, 2108. Subsequently, Walmart

11   Participants with the aid and assistance of the leaders of the Rescue Squad (Theodore

12   Boutros, Eugene Scalia, and Rachel Brass) began a reverse whitewashing campaign to

13   coverup the facts that the RICO Defendants engaged in the original whitewashing cam-

14   paign to coverup Walmart's $140 Bil fraud against shareholder.  Therefore, Greg Penner,

15   Rob Watson, Timothy Flynn, Doug McMillion, Brett Biggs, Marc Lore, Rachel Brand,

16

17   Jeff Gerhart, Jay Jorgensen, Karen Roberts, Kerry Kotous, Theodore Boutros, Eugene

18   Scalia, and Rachel Brass had knowledge about the conspiracy among the members of the

19   WSF Coverup Enterprise to cause injuries to Huynh's properties, and had the power to

20   prevented from happening but refused to do so.

21

22          547.    In summary, the named RICO Defendants above, knew the existence of a

23   conspiracy to cause injuries to Huynh in violation of 18 USC 1985(3), had the power to

24   stop the injuries but refused to do so. As a result of their inactions, Huynh suffered inju-

25   ries to his property (through deprivation of Huynh's constitutional right to equal protec-

26   tion (class of one) under law afforded by the Fifth Amendment of the US Constitution)

27

28   which included but not limited to the loss of Huynh's whistleblower award, the loss of

**COMPLAINT – DEMAND FOR JURY TRIAL**

1   Huynh's civil lawsuit against Walmart, damaged to Huynh's personal and profession rep-

2   utation, and the costs Huynh incurred to appeal District Judge Vince Chhabria's dismissal

3   of his complaint against Walmart.

4

5       548.    Further, as a direct and foreseeable result of the aforesaid acts of said De-

6   fendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to gen-

7   eral and special damages and all appropriate compensatory relief.

8

9       549.    Defendants' conduct was a substantial factor in causing that harm. The

10  above-described acts of Defendants, including by and through their managing agents, of-

11  ficers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and inten-

12  tional manner in order to injure and damage Plaintiff and/or with a conscious disregard of

13  Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppres-

14  sion. Plaintiff requests an assessment of punitive damages against Defendants in an

15
16  amount to be assessed at time of trial.

17

18

19                          **CLAIMS FOR RELIEF**

20                    <u>**SIXTH CLAIM FOR RELIEF**</u>
                            (Abuse of Process)
21                         (Named Defendants)

22      550.    "[T]he essence of the tort of abuse of process [is] ... misuse of the power

23  of the court; it is an act done in the name of the court and under its authority for the pur-

24  pose of perpetrating an injustice.' [Citation.]. The tort is defined in the restatement *876

25  as follows: "One who uses a legal process . . . against another to accomplish a purpose for

26  which it is not designed is liable to the other for the pecuniary loss caused thereby."

27  (Rest., Torts, § 682, p. 464; Spellens v. Spellens (1957) 49 Cal.2d 210, 231 [ 317 P.2d

28  613]; Tranchina v. Arcinas (1947) 78 Cal.App.2d 522, 525 [ 178 P.2d 65].)

                                        343
                        **COMPLAINT – DEMAND FOR JURY TRIAL**

551.     To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner. (See Templeton Feed Grain v. Ralston Purina Co. (1968) 69 Cal.2d 461, 466 [ 72 Cal.Rptr. 344, 446 P.2d 152]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 709, p. 158.)

552.     For purposes of abuse of process, the ulterior motive to prove is that the party employing the process did so for an end not germane thereto. (Debt Collection Tort Practice (Cont.Ed.Bar 1971) § 5.19, p. 129.) And, an improper purpose may consist in **achievement of a benefit totally extraneous to or of a result not within its legitimate scope**. (Templeton Feed Grain v. Ralston Purina Co., supra, 69 Cal.2d at p. 466; Spellens v. Spellens, supra, 49 Cal.2d at p. 231.)  A cause of action for abuse of process cannot be viable absent some harm to the plaintiff caused by the abuse of process. (Rest. 2d Torts § 682; CACI No. 1520.) Thrivent argues that the "willful act in the use of the process not proper in the regular conduct of the proceedings" (Rusheen, supra, 37 Cal.4th at pp. 1056–1057, 39 Cal.Rptr.3d 516, 128 P.3d 713)

553.     The Named Defendants for this cause of action are: Doug McMillion, Brett Biggs, Marc Lore, Rachel Brand, Theodore Boutros, Eugene Scalia, Rachel Brass, Chris Wilson, Ryan Stewart, Susanna Schuemann, and David deRubertis

554.     Huynh realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

555.     As discussed above, the RICO Defendants caused David deRubertis to shotgun pleaded five frivolous FEHA ADHD claims against Walmart in Huynh's 3/15/18 complaint in order to put Huynh's ADHD condition and Huynh's motive for engaging in protected conducts to abuse the discovery process to viciously go after Huynh's psychiatrist and medical records, and Huynh's employment to execute the RICO Defendants' "Nuts & Sluts" Defense strategy to discredit Huynh's credibility as a whistleblower.  This

344

**COMPLAINT – DEMAND FOR JURY TRIAL**

was one of the key factors that led the SEC to issue Walmart a Get Out of Jail Free Card.

Additionally, using these frivolous claims the Rescue Squad and the Walmart Participants

misrepresented the facts and the laws in their court filings in support of Walmart motion

for summary.  Then corruptly influenced District Judge Vince Chhabria to dismiss

Huynh's lawsuit against Walmart in a such a clear, convincing and powerful fashion that

further misled the SEC and/or DOJ, Walmart's investors, investment analysts, the Media,

politicians, and the American public to purportedly claim Walmart's innocence with re-

gard to Walmart's $140 Bil fraud against shareholders.

556.     In short, the RICO Defendants, namely, Doug McMillion, Brett Biggs,

Marc Lore, Rachel Brand, Theodore Boutros, Eugene Scalia, Rachel Brass, Chris Wilson,

Ryan Stewart, Susanna Schuemann, and David  deRubertis exploited the judicial process

in the Huynh vs. Wal-Mart Stores Inc. litigation for ulterior motives i.e., to obtain the

"Get Out of Jail Free" Card, the "Civil Penalties Free" Card, and ensure a civil and crimi-

nal risk-free future for all the RICO Defendants.

557.     In summary, the named RICO Defendants exploited the civil litigation

process as an instrument of injustice and oppression to achieve their own personal benefit

in order to effectuate the WSF Coverup Enterprise's illegal coverup scheme to cash in on

the Billion-dollar bounty.  As a foreseeable result of these actions, they caused injuries to

Huynh's properties which include but are not limited to the loss of Huynh's SEC Whis-

tleblower award, the loss of Huynh's civil lawsuit against Walmart, damaged to Huynh's

personal and profession reputation, and the costs to Huynh in appealing District Judge

Vince Chhabria's dismissal of his complaint with the United States Court of Appeals for

the Ninth Circuit.

**COMPLAINT – DEMAND FOR JURY TRIAL**

558.    Further, these injuries to Huynh were a direct, proximate, and reasonably foreseeable result of the named Defendants in violation of California abuse of process provision, Huynh is the ultimate victim of the named RICO Defendants. Huynh has been and will continue to be injured in his properties in an amount to be determined at trial.

559.    As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.

560.    Defendants' conduct was a substantial factor in causing that harm. The above-described acts of Defendants, including by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

**CLAIMS FOR RELIEF**
**SEVENTH CLAIM FOR RELIEF**
(Invasion of Privacy)
(Named RICO Defendants)

**Invasion of Privacy**

561.    Article I, section 1, of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these *842 are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." The reference to privacy was added in 1972 and amended in 1974 to read as stated.

562.    The "zones of privacy" created by article I, section 1, extend to the details

346

**COMPLAINT – DEMAND FOR JURY TRIAL**

of one's medical history. (Jones v. Superior Court (1981) 119 Cal.App.3d 534, 548-550 [ 174 Cal.Rptr. 148].) And, an "individual's right to privacy encompasses not only the state of his mind, but also his viscera, detailed complaints of physical ills, and their emotional overtones." (Board of Medical Quality Assurance v. Gherardini (1979) 93 Cal.App.3d 669, 679 [ 156 Cal.Rptr. 55].) Most recently, the California Supreme Court has stated: "[¶] If there is a quintessential zone of human privacy it is the mind. Our ability to exclude others from our mental processes is intrinsic to the human personality." (Long Beach City *843 Employees Assn. v. City of Long Beach (1986) 41 Cal.3d 937, 944, fn. omitted [ 227 Cal.Rptr. 90, 719 P.2d 660].)

563.    "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy." (7 Cal.4th at pp. 39-40.).

564.    **Element No. 1:**  It is undisputed that a Plaintiff has a legally protected privacy interest in his/her mental health records.[107] (Pettus v. Cole (1996) 49 Cal.App.4th 402, 440 [ 57 Cal.Rptr.2d 46]; Cutter v. Brownbridge (1986) 183 Cal.App.3d 836, 842 [ 228 Cal.Rptr. 545] and cases cited therein.  A stranger's unauthorized reading and dissemination of a person's mental health records is a serious invasion of the person's privacy. (Cf. Pettus v. Cole, supra, 49 Cal.App.4th at p. 445.) "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace.

565.    **Element No. 2**: The necessity in judicial proceedings for ascertaining the truth is sufficiently compelling to justify disclosure of constitutionally protected information when narrowly limited to information directly relevant to the issues (In re

---

[107] As the United States Supreme Court recognized in Jaffee v. Redmond (1996) ___ U.S. ___, ___ [ 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337]. The federal privilege, which clearly applies to psychiatrists and psychologists, also extends to confidential communications made to licensed social workers in the course of psychotherapy The reasons for recognizing the privilege for treatment by psychiatrists and psychologists apply with equal force to clinical social workers, and the vast majority of States explicitly extend a testimonial privilege to them.

347

1   Lifschutz, supra, 2 Cal.3d at p. 435) and when good cause and materiality to the action

2   establish that the need for disclosure outweighs the right to privacy. (Board of Medical

3   Quality Assurance v. Gherardini, supra, 93 Cal.App.3d 669, 679.)  Although a patient has

4   a constitutionally protected interest in information contained in his or her medical, psy-

5   chiatrists', and psychologists' files, disclosure may be appropriate in narrowly limited

6   circumstances to serve a compelling interest. (Board of Medical Quality Assurance v.

7   Gherardini, supra, 93 Cal.App.3d 669, 680-681; Jones v. Superior Court, supra, 119

8   Cal.App.3d 534, 550.). Per the case law below, neither David deRubertis nor the GDC

9   squad and Walmart had the right to obtain Huynh's record dating back to a quarter center

    ago.

10      566.    In the context of discovery of confidential information in **personnel files**,

11   even when such information is directly relevant to litigation, discovery will not be per-

12   mitted until a balancing of the compelling need for discovery against the fundamental

13   right of privacy determines that disclosure is appropriate. (Board of Trustees v. Superior

14   Court (1981) 119 Cal.App.3d 516, 525 [ 174 Cal.Rptr. 160].) And, even when the bal-

15   ance tips in favor of disclosure, constitutional concerns require a strict circumscription of

    the scope of the disclosure. (Id., at p. 526.).

16      567.    In short, the case laws above stated that 1) Huynh's psychiatrist records,

17   medical records and personnel files are protected from disclosure under the California

18   Constitution right to privacy and 2) Huynh only waived his constitutional right to privacy

19   to keep his psychiatrist and medical records and personnel shield from disclosure only if

20   he put his medical conditional (ADHD FEHA related disability claims) and his motives

21   engaging in protected activities (ADHD FEHA discrimination and retaliation employ-

22   ment claims) at the center of his lawsuits against Walmart.

23      568.    The Named Defendants for this cause of action are: Doug McMillion,

24   Brett Biggs, Marc Lore, Rachel Brand, Theodore Boutros, Eugene Scalia, Rachel Brass,

25   Chris Wilson, Ryan Stewart, Susanna Schuemann, Kari deRubertis, David deRubertis,

26   Doug Kasales, and Kath Von Lindern.

27

28

569.   Huynh realleges and incorporates herein by reference each and every fore-going paragraph of this Complaint as if set forth in full.

570.   As discussed above, the Rescue Squad ordered David deRubertis to shot-gun pleaded five nefarious and frivolous ADHD FEHA claims even though Huynh told David deRubertis that his SOX retaliation claim against Walmart was open and shut.  If not for the named RICO Defendants' action, the GDC Squad and David deRubertis would not have been able to invade Huynh's right to constitutional privacy by going after Huynh's psychiatrist records, medical records, and personnel file viciously to effectuate prong #2 and #3 of the WSF Coverup Enterprise' illegal coverup scheme. Most disturb-ingly, David and Kari deRubertis falsified Huynh's signature to obtain his psychiatrist records then produced them under the table without the confidential designation for no rational basis except the effectuate prong #2 and #3 of the illegal coverup scheme.

571.   In summary, the analysis above proved that Doug McMillion, Brett Biggs, Marc Lore, Rachel Brand, Theodore Boutros, Eugene Scalia, Rachel Brass, Chris Wilson, Ryan Stewart, Susanna Schuemann, Kari deRubertis, David deRubertis, Doug Kasales, and Kath Von Lindern violated Huynh's right to constitutional privacy which cause injuries to Huynh's properties which include but not limited the loss of Huynh's SEC Whistleblower award, the loss of Huynh's civil lawsuit against Walmart, damaged to Huynh's personal and profession reputation, and the costs for Huynh in appealing Dis-trict Judge Vince Chhabria's dismissal of his complaint with the United States Court of Appeals for the Ninth Circuit.

572.   As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and

**COMPLAINT – DEMAND FOR JURY TRIAL**

special damages and all appropriate compensatory relief.

573.     Defendants' conduct was a substantial factor in causing that harm. The above-described acts of Defendants, including by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

## CLAIMS FOR RELIEF
## EIGHT CLAIM FOR RELIEF
(Fraud)
(All RICO Defendants)

574.     Huynh realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

575.     Defendants and their agents have knowingly filed fabricated, mutilated evidence and false declarations as well as submitting factual and legal misrepresentation in their court filings with both the United States District Court of Northern California and the United States Court of Appeals for the Ninth Circuit. Additionally, the RICO Defendants engaged in a criminal whitewash campaign to erase evidence of Walmart's fraud against shareholders then engaged in the purported "True on the Market" Defense to mislead the SEC and/or DOJ, Walmart's shareholders, investment analysts, the media, politicians, and the American public into believing that Walmart was innocent of committing fraud against shareholders to the tune of $140 Bil. Each and every Defendant has personally engaged in this conduct, or knew or should have known that other Defendants were

**COMPLAINT – DEMAND FOR JURY TRIAL**

engaged in it on his or her behalf. These false representations are detailed throughout this Complaint and include the evidence fabrication, evidence destruction, misrepresentations in Robert Ohmes' investment reports and in numerous Bloomberg News article published by Matthew Boyle.

576.    Defendants made these false representations while knowing that their mis-representations were materially false and/or that their omissions were material.  Defend-ants further made these misrepresentations, half-truth statements and/or omissions with the intent of getting the SEC and/or the DOJ to issue them the non-enforcement letter and to get District Judge Chabbria to dismiss all of Huynh's claims against Walmart.

577.    These material misrepresentations and/or omissions have been reasonably and justifiably relied upon by Huynh, the U.S. courts, state and federal government agen-cies officials e.g., the SEC and/or the DOJ, Walmart's shareholders, investors, analysts, and the media by means of its acceptance of Defendants' misrepresentations and omis-sions and their failure to take meaningful corrective action.

578.    As a direct, proximate, and foreseeable result of Defendants' fraud, Huynh has been harmed, including but not limited to the loss of 1) Huynh's claim to his SEC Whistleblower award, 2) Huynh's claim to his lawsuit against Walmart, 3) damaged to Huynh's personal and professional reputation and good name, and 4) costs to appeal Dis-trict Judge Vince Chhabria's dismissal of Huynh's Lawsuit.

579.    As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.

580.    Defendants' conduct was a substantial factor in causing that harm. The above-described acts of Defendants, including by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

**CLAIMS FOR RELIEF**
**NINTH CLAIM FOR RELIEF**
(Civil Conspiracy)
(All RICO Defendants)

581.    Huynh realleges and incorporates herein by reference each and every foregoing paragraph of this Amended Complaint as if set forth in full.

582.    As set forth above, Defendants have committed torts against Huynh, including acts of racketeering giving rise to violations of RICO, Biven Action, 18 USC 1985(3), 18 USC 1986, abuse of process, invasion of privacy, and fraud.

583.    Defendants agreed to participate in a common scheme against Huynh. Defendants intentionally participated in the furtherance of WSF Coverup Enterprise's illegal coverup scheme in order to achieve the criminal enterprise common purpose to conceal Walmart's $140 Bil fraud against shareholders. This action caused direct injuries to Huynh's property. In furtherance of this plan or purpose, Defendants committed overt and unlawful acts, including acts of racketeering as alleged herein.

584.    As a direct, proximate, and foreseeable result of Defendants' fraud, Huynh

**COMPLAINT – DEMAND FOR JURY TRIAL**

has been harmed, including but not limited to the loss of 1) Huynh's claim to his SEC Whistleblower award, 2) Huynh's claim to his lawsuit against Walmart, 3) dam-aged to Huynh's personal and professional reputation and good name, and 4) costs to appeal District Judge Vince Chhabria's dismissal of Huynh's Lawsuit

585.   As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.

586.   Defendants' conduct was a substantial factor in causing that harm. The above-described acts of Defendants, including by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff's rights. Such acts were despicable and constitute malice, fraud, and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be assessed at time of trial.

**COMPLAINT – DEMAND FOR JURY TRIAL**