UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI MINH HUYNH,<br><br>   Plaintiff,<br><br>   v.<br><br>WALMART, INC., et al.,<br><br>   Defendants. | Case No. 22-cv-00142-JSC<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 211, 213, 214, 215, 217, 220 |

This matter comes before the Court upon the motions to dismiss filed by Defendants Walmart, Inc. ("Walmart"); Doug McMillon; Brett Biggs; Marc Lore; Gibson, Dunn & Crutcher LLP ("Gibson Dunn"); Theodore J. Boutrous, Jr.; Rachel Brass; The deRubertis Law Firm; David deRubertis; EPIQ eDiscovery Solutions ("EPIQ"); Douglas Kasales; Lighthouse Document Technologies ("Lighthouse"); BOFA Securities ("Bank of America"); and Robert Ohmes. Plaintiff Tri Minh Huynh ("Plaintiff"), proceeding without the assistance of counsel, alleges Defendants (1) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964; (2) conspired to violate RICO; and (3) violated his Fifth Amendment rights. (Dkt. No. 171.)[1] After carefully considering the briefing and having had the benefit of oral argument, the Court GRANTS Defendants' motions to dismiss for the reasons explained below.

## BACKGROUND

Plaintiff's first amended complaint ("FAC") is 187 pages. (Dkt. No. 171.) Plaintiff attached 119 exhibits, comprising roughly 1,200 pages, to his complaint. (*Id.*) Below, the Court summarizes Plaintiff's allegations and the procedural history relevant to the current motions.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## I. Complaint Allegations

Plaintiff worked for former defendant Walmart.com, USA, LLC to assist business development efforts for Walmart.com. (Dkt. No. 171-51 at 7.) His employment was terminated in January 2017. (*Id.* at 10.)

### A. Initial Administrative Complaints

After his termination, Plaintiff prepared to submit a complaint against Walmart to the Securities and Exchange Commission ("SEC"). (Dkt. No. 171 ¶¶ 61–62.) Plaintiff believed that Walmart had engaged in shareholder fraud. (*Id.* ¶ 62; *see also id.* ¶¶ 31–40 describing the alleged fraud.) Plaintiff reported that fraud internally to Walmart's Global Ethics team in December 2016, just prior to his termination. (*Id.* ¶ 165.) Because he felt his termination was retaliatory, Plaintiff also sought counsel for wrongful termination litigation against Walmart. (*Id.* ¶ 61.) In April 2017, just before filing his SEC complaint, Plaintiff met with defendant David deRubertis of the deRubertis Law Firm to discuss wrongful termination litigation. (*Id.*) Plaintiff explained to deRubertis that he planned to file an SEC complaint against Walmart based on "hundreds of pages of original analyses and documentary evidence" alleging Walmart's senior executives "knowingly made misleading statements of material facts" to investors. (*Id.* ¶¶ 61, 41.)

During the April 2017 meeting, Plaintiff claims deRubertis "realized he just stumbled on a goldmine" because Walmart would pay as much as "one Billion dollars" to cover up the alleged fraud. (*Id.* ¶ 62.) Plaintiff "believes that sometime between Apr 4 and Apr 13, deRubertis contacted Walmart and the Rescue Squad (the Gibson Dunn's team [sic] that represented Walmart in the Huynh's [sic] civil and SEC matters" to "inform Walmart that Huynh was about to submit serious allegations of shareholder fraud against Walmart to the SEC." (*Id.* ¶ 63.) Plaintiff felt deRubertis acted "abnormally weird" and attempted to "lure" him as a client, because deRubertis asked to see Plaintiff's draft SEC complaint, requested an introduction to Plaintiff's SEC counsel, and agreed to represent Plaintiff in his employment litigation on a contingent basis after reviewing the draft SEC complaint. (*Id.* ¶¶ 64–66.) Plaintiff filed his SEC complaint shortly thereafter. (*Id.*)

Defendant deRubertis allegedly "leveraged his relationship as Huynh's legal counsel between late April 2017 to late 2018 to spy on Huynh and gathered [sic] confidential and non-

2

public information that Huynh submitted to the SEC regarding Walmart's misconducts." (*Id.* ¶ 82.) Plaintiff contends deRubertis "leaked this information to the other RICO Defendants," so Defendants could "execute a whitewashing campaign" to cover up the alleged fraud, defeat Huynh's litigation, and "coverup the coverup." (*Id.* ¶¶ 82–118.)

Plaintiff and deRubertis filed a complaint with OSHA for violations of the Sarbanes-Oxley Act's ("SOX") whistleblower protections on May 11, 2017. (*Id.* ¶¶ 67, 226.) He alleged Walmart terminated his employment after he reported potential shareholder fraud internally. (*Id.* ¶ 226.) David deRubertis asked Huynh to review an amended OSHA complaint in July 2017. (*Id.* ¶ 227.)

Huynh alleges the OSHA process was a ruse. He states, "deRubertis and the other RICO Defendants never intended to go through the OSHA Whistleblower complaint process because they wanted to take Huynh's case to Federal Court[.]" (*Id.* ¶ 232.) Instead, he alleges both that deRubertis pretended to file the complaint on May 11, 2017 and the amended complaint on July 10, 2017, (*id.* ¶ 239), and Defendants conspired with OSHA investigator Mark Marchione to obstruct OSHA from investigating Huynh's complaints, (*id.* ¶ 241). Defendants performed this ruse to (1) show exhaustion of administrative remedies to a federal court; (2) pass Huynh's SEC submissions to Walmart and Gibson Dunn through the fake OSHA filings; and (3) create a "paper trail" to protect the RICO Defendants from future criminal prosecution. (*Id.* ¶ 233-235.) Plaintiff seems to allege both that the OSHA process never occurred, (*id.* ¶¶ 232, 251), and that deRubertis used these filings to legitimately hand over Huynh's SEC submissions to Walmart and the Gibson Dunn defendants, (*id.* ¶ 234).

Plaintiff admits that he "currently doesn't possess direct evidence to prove that the RICO Defendants obstructed the OSHA proceeding" but claims he proved the conspiracy to obstruct based on circumstantial evidence. (*Id.* ¶ 236.) That evidence includes (1) deRubertis's repeated refusals to provide Huynh with a copy of OSHA's complainant notification letter; (2) deRubertis's claim that he filed a 125-page amended complaint, which mirrored the contents of Huynh's SEC submission verbatim; (3) that the filing date of the complaint shifted from "5/11/17" in deRubertis's records to "5/17/17" on the OSHA response letters; (4) that the language in Huynh's dismissal letter was different from another dismissal letter in a different case; and (5) that the

3

timeline of Huynh's OSHA process differed from OSHA guidelines. (*Id.* ¶¶ 229–246.)

Plaintiff alleges that the discrepancy in dates is significant. (*Id.* ¶ 239.) Plaintiff states that the participants changed the date on his faked OSHA complaint to May 17, 2017, so Walmart could have plausible deniability regarding the contents of the OSHA complaint during a pre-recorded earnings call that was released on May 18, 2017. (*Id.* ¶ 246.) Plaintiff contends that Walmart used that May 18, 2017 call to shift its metrics, and whitewash its earlier misrepresentations—making Plaintiff's objections seem irrelevant. (*Id.*) After that point, the Walmart Defendants began to refer to "Walmart.com" and "Walmart Marketplace" in a deceptive manner to obscure misreporting of the total number of products—"SKUs"—offered on the platforms. (*Id.*)

Immediately after the May 18, 2017 earnings call, defendant Robert Ohmes—who works as an investment analyst for defendant Bank of America—published a report using the terms "Marketplace.com" and "Walmart.com/online" interchangeably. (*Id.* ¶ 87.) Plaintiff believes that—given the proximity in time between the call and Ohmes' report—Ohmes and the other RICO Defendants coordinated the content of the report. (*Id.*) While he admits he has no evidence of any such communications between Ohmes and any other defendant, he believes it exists and would be found in discovery. (*Id.*)

Shortly after that earnings call, the SEC sent a letter to Walmart asking questions "related to the allegations in Huynh's [April 17, 2017] SEC complaint." (*Id.* ¶ 106.) William Thompson, an SEC employee, sent the letter. (*Id.*) Huynh claims that the letter was "pretextual" because there were "no visible triggers that could have caused Thompson to send this letter." (*Id.* ¶ 107.) Thompson's letter was meant "to give Walmart a platform to answer Thompson's questions" and "to mask the materiality of Huynh's allegations that Walmart inflated its Ecommerce GMV and Op Profit." (*Id.* ¶ 108.) Huynh claims that this letter is evidence that Thompson conspired with the RICO Defendants to cover up the alleged fraud. (*Id.* ¶ 106.)

In September 2017, deRubertis sent Huynh Walmart's OSHA position statement. (*Id.* ¶ 165; Dkt. No. 171-111.) Walmart claimed it selected Huynh for termination due to poor performance and an overall reduction in force ("RIF"). (*Id.*) Walmart provided a November 2016

4

email and an excel sheet titled "RIF list," in which Plaintiff's supervisor suggested terminating Plaintiff. (*Id.*) In an email, deRubertis told plaintiff that the "we laid him off right after learning of the formal ethics complaint" theory was "too good to be true" and that the lawsuit would need to focus on protected activity that occurred prior to November 2016. (*Id.*) OSHA sent Plaintiff a dismissal letter—which he claims was a fake—in March 2018. (Dkt. No. 171 ¶ 240.)

David deRubertis also filed a complaint with California's Department of Fair Employment and Housing ("DFEH"), arguing that Walmart failed to account for Plaintiff's ADHD diagnosis (*Id.* ¶ 247.). Plaintiff accuses deRubertis of "manufacturing" a right to sue letter from DFEH because DFEH and deRubertis served the right to sue letter upon Walmart at the exact same time. (*Id.* ¶¶ 247–250.)

Finally, deRubertis also filed a complaint under California's Private Attorneys General Act ("PAGA") with California's Labor and Workforce Development Agency. (*Id.* ¶ 251.) Plaintiff claims this complaint is exactly the same as the OSHA Amended Complaint that was never actually filed. (*Id.*) He asserts that deRubertis filed this complaint in concert with Gibson Dunn to use the PAGA claim as another excuse to leak his SEC submission to the RICO defendants. (*Id.*)

### B. Plaintiff's Initial Litigation (Huynh I)

Plaintiff and deRubertis worked together to file a complaint in federal court. (*Id.* ¶ 119.)

#### 1. Filing the Complaint

Plaintiff grew frustrated that deRubertis could not complete the complaint faster. (*Id.*) He alleges that deRubertis "intentionally delayed filing Huynh's SOX complaint to allow the other RICO Defendants to mislead investors, analysts, the SEC and/or other Governmental Agencies to cover up" the alleged fraud. (*Id.* ¶ 120.) In early 2018, deRubertis sent multiple emails asking Plaintiff to stop requesting daily updates on the case and refusing to share a work in progress complaint. (*Id.*) Plaintiff believes that deRubertis lied about his reasons for delaying the SOX lawsuit because deRubertis sent "Rush Requests" to Huynh's medical providers—presumably for records of the ADHD diagnosis. (*Id.* ¶ 121.)

Plaintiff and deRubertis also disputed certain aspects of the draft complaint. In particular, Huynh asked deRubertis to remove a reference to a $7 million figure in the complaint. (*Id.* ¶ 145.)

That figure represented Walmart's failure to process certain customer returns—which inflated Walmart's revenue reporting. (*Id.*) Huynh felt that the total fraud he reported to the SEC was much larger. (*Id.*) Huynh alleges that by emphasizing the lower figure in the complaint, Walmart and Gibson Dunn could discredit Huynh's SEC complaint via a coordinated PR campaign. (*Id.* ¶ 149.) Huynh cites deRubertis's refusal to correct the $7 million figure as proof that Defendants conspired to undermine his SEC claim. (*Id.*)

Plaintiff filed the complaint in this district in March 2018. (*Id.* ¶ 151.) Shortly thereafter, Plaintiff filed an amended complaint alleging SOX whistleblower retaliation, state law retaliation, wrongful termination, and disability discrimination based on Huynh's ADHD diagnosis. (*See* 3:18-cv-01631-VC ("*Huynh I*") at Dkt. Nos. 1, 8.) David deRubertis worked with a Bloomberg Reporter, former defendant Matthew Boyle, and a "PR agency" to publicize the complaint. (Dkt. No. 171 ¶ 150.) Along with Bloomberg, reporters from Reuters, Buzzfeed, Recode, and CNBC covered the complaint. (*Id.* ¶ 151.) Each published the "$7 million" figure. (*Id.* ¶ 152.) Walmart's stock dropped the day Plaintiff filed his initial complaint. (*Id.* ¶ 155.)

Walmart retained lawyers from Gibson Dunn to represent the company in *Huynh I*. (*Id.* ¶ 63.) Walmart denied Huynh's claims and told reporters that Huynh was a "disgruntled former associate." (*Id.* ¶ 155.) Walmart answered the complaint and the case proceeded to discovery. (*See Huynh I* at Dkt. No. 29.)

### 2. Discovery Disputes

Plaintiff's counsel hired defendant EPIQ, a New York based company, to process Huynh's personal laptop hard drive. (Dkt. No. 171 ¶ 159.) Huynh states: "it is not unreasonable to infer that Walmart and [the Gibson Dunn] participants may have paid Dough [sic] Kasales" and other EPIQ employees to get them to perform improper acts "(i.e., mining Huynh's laptop for confidential and privilege information as well as engaging in evidence destruction and concealment etc.)." (*Id.*) Defendant Kasales is an EPIQ employee based in Seattle. (*Id.* at 103 n.38.) Plaintiff alleges that Kasales lied to him regarding (1) the file names and paths for Plaintiff's privileged emails and (2) about whether EPIQ followed industry e-discovery standards for metadata extraction. (*Id.* ¶¶ 161–162.) Based on these lies, Plaintiff states that Kasales and

6

deRubertis mined Huynh's personal hard drive to extract confidential information and gave that information to opposing counsel and Walmart. (*Id.*)

In particular, he accuses deRubertis and Kasales of exposing Huynh's privileged email communications regarding his termination from Amazon. (*Id.* ¶ 162.) Plaintiff also believes that deRubertis gave medical records to Gibson Dunn and Walmart that portrayed Huynh as mentally ill with patterns of "blowing the whistle." (*Id.* ¶¶ 158, 162, 169.) The medical record at issue referenced an email Plaintiff had sent to Jeff Bezos. (*Id.*) Plaintiff believes that Kasales mined his laptop for this email and produced it to Gibson Dunn "because of the Request for Document production and Interrogatories they impounded upon Huynh during discovery were based on this information." (*Id.*) Defendant Brass, Walmart's counsel, mentioned this email during Huynh's deposition. (*Id.* ¶ 164.)

Plaintiff's relationship with deRubertis broke down. (*Id.* ¶¶ 162–163.) Huynh complains that deRubertis listed over 60 witnesses in the initial disclosures to Walmart. (*Id.* ¶ 171.) Because these witnesses were not—in Huynh's judgment—related to the SOX claim but were related to the SEC claim, Huynh "strongly believes" deRubertis leaked this "confidential information" to Walmart and Gibson Dunn to allow the "co-conspirators" to prepare for the SEC investigation. (*Id.*) He also states that deRubertis used interstate emails to threaten and intimidate him into giving access to his Amazon personnel file. (*Id.* ¶ 163.) Huynh fired deRubertis in November 2018. (*Id.*) Plaintiff proceeded without a lawyer. (*Huynh I*, Dkt. No. 41.) He then agreed to dismiss his ADHD based claims and proceeded on his whistleblower and wrongful termination claims. (*Huynh I*, Dkt. Nos. 66, 81.) After Plaintiff and deRubertis separated, deRubertis turned over 3,672 pages of documents that Walmart had produced in discovery. (Dkt. No. 171 ¶ 207.) Plaintiff believes this was an incomplete accounting because Walmart stated it produced more than 4,048 pages in an interrogatory response. (*Id.* ¶ 208.) The parties then litigated several discovery disputes before a magistrate judge. (*Id.* ¶¶ 209–215.)

### 3. Summary Judgment and SEC Non-Enforcement Decision

The SEC declined to take enforcement action against Walmart and issued a non-enforcement letter in April 2019. (*Id.* ¶ 175.) Walmart moved for summary judgment in the

7

employment litigation in August 2019. (*Huynh I*, Dkt. No. 113.)

The court granted Walmart's motion for summary judgment. (*Huynh I*, Dkt. No. 167.) The court stated it was doubtful whether Huynh had, in-fact, blown the whistle because he produced little evidence that he complained about unlawful activities in October 2016. (*Id.* at 2.) But assuming Huynh had complained about unlawful activities and could make a prima facie SOX claim, the Court still found that Walmart would prevail based on a "mountain of evidence" that Huynh was a poor-performing employee and that his termination was unconnected to any whistleblowing. (*Id.* at 3.) This evidence included a (1) hostile work environment complaint against Huynh; (2) a "media ban" Huynh received after giving unauthorized comments to news media; (3) a sexual harassment accusation which Walmart investigated and corroborated—finding "an inability to demonstrate good judgement" as a leader; (4) erratic behavior complaints; (5) that he was terminated as part of a significant layoff of 200 people; and (6) that other employees who had expressed similar concerns were not terminated. (*Id.* at 2–4.)

Huynh states that this evidence was "bogus" and that Defendants both (1) destroyed evidence of his meetings with Beal (where he blew the whistle on Walmart's alleged fraud) and (2) manufactured evidence of his poor performance (including the excel RIF list in his supervisor's email and the sexual harassment HR investigation). (Dkt. No. 171 ¶¶ 200, 206.) Plaintiff alleges that Walmart's e-discovery provider, defendant Lighthouse, as well as Walmart's other counsel—dismissed defendant Payne & Fears—engaged in this evidence destruction and creation alongside EPIQ. (*Id.* ¶¶ 166, 167, 187.) He also claims he could not use certain evidence to meet his burden to rebut Walmart's claims because the evidence was improperly marked confidential, and he did not know how to file under seal. (*Id.* ¶¶ 212–215.)

### 4. Reconsideration and Appeal

Shortly after the court granted summary judgment, Huynh filed a letter alleging that Walmart hired 10 new employees during the RIF. (*Id.* ¶ 220.) A few days after that, Huynh states he discovered deRubertis "caused Kasales to destroy evidence of Huynh's meetings with Beal in early Oct 2016." (*Id.* ¶ 221.) He requested an explanation from Kasales, but Kasales responded with a "bogus answer." (*Id.*) An hour later, the court filed an order construing Huynh's earlier

8

letter as a "motion for reconsideration," denying that motion, and informing Plaintiff that the court would not consider further unsolicited filings. (*Id.*) Because of the "one-hour temporal proximity," Huynh concludes that "Kasales contacted Brass and/or David deRubertis to inform them of Huynh's plan to file a motion for reconsideration" and that "subsequently a reputable party within the judicial community must have contacted Judge Chhabria in order to improperly influence him to issue the ruling to obstruct Huynh from filing a motion for reconsideration." (*Id.*) Plaintiff filed another motion to reconsider—this time with information that should have been filed under seal. (*Id.* ¶ 222.) Plaintiff corrected the mistake. (*Id.*) The court denied the motion and revoked Plaintiff's e-filing privileges. (*Id.*) Plaintiff appealed to the Ninth Circuit Court of Appeals, which affirmed the district court's ruling. (*Huynh I*, Dkt. Nos. 183–187.)

### C.  The Present Case (Huynh II)

Plaintiff filed his initial complaint in this matter on January 10, 2022, without the assistance of a lawyer. (Dkt. No. 1.) Plaintiff alleges that Defendants conspired to undermine his civil case and his SEC complaint. Plaintiff alleges Defendants (1) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) conspired to violate RICO, *id.* § 1962(d); and (3) violated his Fifth Amendment rights. (Dkt. No. 171.)

He explicitly states: "This case is not about the fact that Walmart ripped off their shareholders to the tune of $140 Billion." (*Id.* ¶ 2.) Rather, he states that this case is about how Defendants formed "an association in fact enterprise" to cover up that fraud. (*Id.*) He also alleges that Judge Chhabria and Magistrate Judge Kim were participants in the RICO conspiracy but are not named due to the doctrine of judicial immunity. (*Id.* at 165 n.52.) As discussed above, he alleges that this enterprise violated RICO and his Fifth Amendment due process rights. He believes he was damaged because due to the Defendant's actions he lost his claim to an SEC whistleblower award, he lost his civil lawsuit against Walmart, and he paid to appeal Judge Chhabria's dismissal to the Ninth Circuit Court of Appeals. (*Id.* ¶¶ 290, 338.)

Plaintiff alleges Defendants committed wire fraud when they attempted to obstruct service of process in this case. (*Id.* ¶¶ 259–276.) Plaintiff believes that the "single point of failure" in his lawsuit is service of process because if he improperly served one defendant, the other defendants

9

1  could claim failure to join a necessary party and move to dismiss. (*Id.* ¶ 258.) Plaintiff cites three
2  examples of alleged wire fraud: (1) Brass—who was Walmart's counsel in *Huynh I* and is both
3  counsel and a defendant in *Huynh II*—offered to waive service of process in *Huynh II* for herself
4  and her clients, (*Id.* ¶ 261); (2) Counsel for EPIQ reached out to Huynh regarding the proper entity
5  name for EPIQ, (*Id.* ¶ 268); and (3) deRubertis worked "in concert" with Plaintiff's service
6  provider to sabotage service of process, (*Id.* ¶ 271).

**II.     Subsequent Procedural History**

Plaintiff has voluntarily dismissed his claims against Walmart.com USA, LLC; Walmart employees Rachel Brand, Gregory Penner, Timothy Flynn, S Robson Walton, Seth Bela, Valerie Ricetti, Audrey Au Joulina, and Melvenia Ha; Gibson Dunn attorneys Eugene Scalia, Ryan Carlton Stewart, Chris Wilson, and Susanna Schuemann; OSHA investigator Mark Marchione; EPIQ employee Kathy Von Lindern; the law firms Payne & Fears LLP and Orrick, Herrington & Sutcliffe LLP; The deRubertis Law Firm's Kari deRubertis; Lighthouse employee Renee Quezada; and Bloomberg employee Matthew Boyle. (Dkt. Nos. 205–210, 222, 226, 229.) The remaining defendants include the "Walmart Defendants": Walmart, Doug McMillon, Brett Biggs, and Marc Lore; the "Gibson Dunn Defendants": Gibson Dunn, Theodore J. Boutrous, Jr. and Rachel Brass; The deRubertis Law Firm and David deRubertis; EPIQ and its employee Douglas Kasales; Lighthouse; Bank of America and its employee Robert Ohmes. William Thompson is named as a defendant but was never served.

The Walmart Defendants and the Gibson Dunn Defendants move to dismiss jointly, (the "Walmart Motion"). (Dkt. No. 211.) Robert Ohmes, Bank of America, Douglas Kasales, EPIQ, the deRubertis Law Firm and David deRubertis move to join the Walmart Motion. (Dkt. Nos. 213, 214, 220.) Lighthouse also moves to dismiss. (Dkt. No. 215.) And deRubertis and the deRubertis Law Firm make a separate motion to dismiss. (Dkt. No. 217.) Plaintiff opposed. (Dkt. No. 225.) The Walmart Defendants and the Gibson Dunn Defendants replied jointly. (Dkt. No. 227.) EPIQ, Kasales, Bank of America, and Ohmes move to join that reply. (Dkt. Nos. 230, 232.) Lighthouse filed a separate reply, (Dkt. No. 228), as did the deRubertis defendants. (Dkt. No. 231). Plaintiff filed a sur-reply to the deRubertis reply. (Dkt. Nos. 237, 238).

The motions for joinder are GRANTED.  (Dkt. Nos. 213, 214, 220, 230, 232.)

**DISCUSSION**

Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Moreover, when a plaintiff proceeds without representation by a lawyer, the Court must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (cleaned up).

But the Court need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment.  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). And, when considering plausibility, courts must also consider an "obvious alternative explanation" for a defendant's behavior. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc*., 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

"[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

11

sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up).  Here, the latter basis for dismissal controls.  Because the FAC fails to allege sufficient facts to support Plaintiff's legal claims, the Court grants Defendants motions to dismiss.  *Id.*

## I. Plaintiff's RICO Allegations Fail to State a Claim

The RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  "The terms of the Civil RICO statute permit [a]ny person injured in his business or property by reason of a violation of § 1962 to recover treble damages."  *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020).  To state a civil RICO claim, a plaintiff must allege facts showing each defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (cleaned up).  To state a civil RICO conspiracy claim under § 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."  *Id.*; *see also Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (same).

Accepting the facts pleaded in the FAC as true, the FAC fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Because Plaintiff fails to allege sufficient facts, the RICO and RICO conspiracy claims must be dismissed.  *Id.*

### A. The FAC's Factual Allegations Fail to Support Plaintiff's § 1962(c) Claim

Plaintiff's RICO claim alleges Defendants formed an association-in-fact enterprise for the purpose of covering up the Walmart fraud and defeating Plaintiff's SEC and SOX claims.  This RICO claim relies on four premises: (1) deRubertis stole confidential information and disseminated that information to Walmart and Gibson Dunn, (Dkt. No. 171 at 171 ¶ 279); (2)

12

Defendants worked together to whitewash Walmart's alleged misstatements and undermine Huynh's credibility with the SEC, (*id.* ¶¶ 87, 96, 100, 103, 114–115, 309); (3) Defendants worked with e-discovery vendors (Lighthouse and EPIQ) to destroy Plaintiff's favorable evidence and fabricate unfavorable evidence, (*id.* ¶¶ 287, 295–296); and (4) Walmart and Gibson Dunn influenced a district court judge to disrupt Plaintiffs' SOX lawsuit, (*id.* ¶ 221). The facts (as opposed to conclusions) alleged in the FAC do not support a plausible inference that any of those premises are true and thus do not allow the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

### 1. Theft and Dissemination of Confidential Information

Based on the FAC, the Court cannot reasonably infer that deRubertis worked with the Walmart and Gibson Dunn Defendants to "disseminate" Plaintiff's confidential information. (Dkt. No. 171 ¶ 279.) Plaintiff describes the stolen information as "the first pillar" in Defendants' scheme and "the foundation that fueled the development and execution of the other two pillars i.e. the schemes to defraud the SEC and the District Court." (Dkt. No. 225 at 6.)

#### (i) David deRubertis

With regard to deRubertis, Plaintiff alleges the following facts: (1) deRubertis was excited about Plaintiff's case, covered Plaintiff's travel to discuss the case, and offered to take his case on a contingent basis; (2) deRubertis' retainer agreement required Plaintiff to notify deRubertis if he filed for bankruptcy; (3) deRubertis worked with Plaintiff's SEC counsel before filing (or pretending to file) an OSHA complaint; (4) deRubertis filed PAGA and FEHA claims with similar language to the OSHA complaint prior to filing *Huynh I*; (5) deRubertis forced Plaintiff to authorize the release of Plaintiff's Amazon personnel files; (6) deRubertis delayed filing the *Huynh I* complaint for three months; (7) deRubertis refused to change the $7 million figure in the *Huynh I* complaint; (8) deRubertis disclosed potential witnesses and documents in discovery; and (9) shortly after deRubertis saw his SEC complaint, the Walmart Defendants began to change how they discussed the business operations at the heart of his SEC complaint. From these facts, Plaintiff infers deRubertis conspired with Walmart and Gibson Dunn to leak confidential information and undermine his SEC complaint. (*Id.* ¶ 280.)

13

That conclusory inference is not plausible based upon the facts alleged. When considering plausibility, courts must also consider an "obvious alternative explanation" for a defendant's behavior. *Eclectic Properties*, 751 F.3d at 996 (9th Cir. 2014). Here, the factual allegations against deRubertis describe standard litigation behavior. For example, neither the offer to take the case on a contingent fee agreement nor the bankruptcy notification provision raise an inference that deRubertis had any relationship with Walmart and Gibson Dunn other than as opposing counsel. Similarly, based on "judicial experience and common sense," deRubertis' desire to know the contents of the SEC complaint suggests that he hoped to avoid contradictory allegations in the OSHA/SOX complaints. *Iqbal*, 556 U.S. at 679. Likewise, based on judicial experience, filing the OSHA, PAGA, and FEHA claims with administrative agencies—to meet exhaustion requirements—does not support a reasonable inference of a conspiracy to leak the SEC complaint. That is especially true where, as here, Walmart *already knew* Plaintiff reported fraud because that report was the basis for his SOX claim. (Dkt. No. 171 ¶ 175.) The inference that the OSHA filing was faked based on minor discrepancies in the OSHA response letters is unwarranted. And allegations that deRubertis drafted the complaint slowly, complied with the requirements for witness disclosure, and produced document discovery in a manner Plaintiff disagreed with does not support a plausible inference that deRubertis conspired with opposing counsel to defeat Plaintiff's lawsuit.

In sum, Plaintiff provides no facts that allow the Court to reasonably infer any relationship between deRubertis and Walmart/Gibson Dunn other than as opposing counsel in a lawsuit. Because Plaintiff has not made factual allegations against deRubertis that "nudg[e] their claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570, this first premise is unsupported.

### 2. "Whitewashing" Statements and the SEC Investigation

Plaintiff alleges that the RICO enterprise's "second pillar" involves the scheme to defraud the SEC. (Dkt. No. 225 at 6.) The SEC "pillar" involves two steps: (1) that Defendants used the confidential information deRubertis leaked to "whitewash" the Walmart shareholder fraud; and (2) Defendants attacked Huynh's credibility. (*Id.*) Specifically, Plaintiff alleges that McMillon

14

(Walmart's CEO), Biggs (Walmart's CFO), and Lore (Walmart.com's CEO) made misleading statements in 2016. Plaintiff reported these statements to the SEC in 2017. Plaintiff alleges that—shortly after deRubertis "leaked" the SEC report—the Walmart Defendants began to "whitewash" their earlier statements and persuaded other individuals to join in that scheme to "whitewash" the earlier fraud. (Dkt. No. 171 ¶ 85.) Plaintiff alleges that but for these acts, the SEC would have levied a $500 million penalty against Walmart and, as a whistleblower, he would have been entitled to between $50 and $150 million dollars. Accepting the facts pleaded in the FAC as true, Plaintiff has not pled sufficient facts that allow the Court the make a reasonable inference that Defendants are liable under RICO for disrupting the SEC investigation.

### (i) The Walmart Defendants

Plaintiff extensively details McMillon, Biggs, and Lore's statements regarding the Walmart.com reporting issues in 2016–2018. (*Id.* ¶¶ 88, 101, 109, 114–115.) For the purposes of the motion to dismiss, the Court accepts Plaintiff's allegation that these statements were misrepresentations. Plaintiff then alleges that the SEC investigated Walmart and sent Walmart a non-enforcement letter in 2019. (*Id.* ¶ 175.) From these facts, Plaintiff infers that Defendants' "whitewashing" caused Huynh to lose an SEC award worth between $50 and $150 million.

To state a claim under RICO, Plaintiff must show that defendants caused an injury to his business or property. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (cleaned up). "[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010). Plaintiff states only that the SEC declined to prosecute Walmart. (Dkt. No. 171 ¶ 175.) The FAC provides no facts that explain *why* the SEC declined to prosecute Walmart—such as the reasoning in the referenced SEC non-prosecution letter. Instead, Plaintiff infers (1) the SEC declined to prosecute Walmart because of the whitewashing; (2) the SEC would have levied a penalty against Walmart; and (3) the SEC would have awarded Plaintiff a reward.

Given the facts in the FAC, the inference that the SEC declined to prosecute Walmart because of this subsequent "whitewashing" is not warranted or reasonable. The SEC's unexplained, independent enforcement judgment disrupts the "directness of the relationship

between the conduct and the harm." *Hemi Grp. LLC*, 559 U.S. at 12.  Moreover, injury to a potential award from the SEC is not a "concrete financial loss" to a recognized property interest. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  Financial loss alone, without a property interest, is insufficient.  *Id*.  Therefore, Plaintiff's FAC fails to allege facts that support a reasonable inference that the Walmart Defendants caused the SEC to decline to prosecute him and injured his property.

### (ii) Ohmes, Bank of America, and Boyle

Plaintiff also alleges the Walmart Defendants and the Gibson Dunn Defendants pressured other actors—Ohmes and dismissed defendant Boyle—to help "whitewash" the Walmart fraud and defeat the SEC investigation.  (*Id.* ¶ 87.)  The factual allegations do not support a plausible inference that Ohmes and Boyle worked with other RICO defendants to defeat Plaintiff's claims.  Plaintiff alleges no facts that support a relationship between the Walmart/Gibson Dunn Defendants and Ohmes or Boyle.  Ohmes' sole involvement in this case is that he wrote investment reports about Walmart for his employer, Bank of America.  (*Id.*)  In those reports, he used terms the terms "Marketplace" and "Walmart.com" interchangeably in a manner that Plaintiff believes undermined his SEC complaint.  (*Id.*)  Because Ohmes published this report shortly after an earnings call, Plaintiff "believes" that Ohmes conspired with Walmart and Gibson Dunn to coordinate these reports.  (*Id.*)  That inference is unwarranted.  The fact that an investment analyst authored a report shortly after an earnings call does not support an inference that Walmart or Gibson Dunn directed the content of that report.  Similarly, the claims that Walmart and Gibson Dunn directed Boyle's activities are wholly conclusory and unsupported by any facts.  (*Id.* ¶ 91.)  In sum, Plaintiff has not made the kind of factual allegations that "nudg[e] their claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570.

Moreover, as with the allegations concerning the Walmart Defendants' statements, Plaintiff's allegations against Boyle and Ohmes/Bank of America also fail to properly allege causation and injury under RICO because the SEC's independent judgment disrupts the chain of proximate causation and plaintiff lacked a property interest in the SEC award.

### (iii) Kasales, EPIQ, and deRubertis

16

1    Plaintiff alleges the Gibson Dunn Defendants directed deRubertis to conspire with Kasales
2    and EPIQ to disclose Huynh's medical records.  (*Id.* ¶ 100.)  Huynh states that deRubertis
3    disclosed these documents "secretly" without confidentiality designations in 2018 and that he
4    "believes" that Orrick (Walmart's SEC Counsel) and Gibson Dunn used these records against him
5    with the SEC to undermine his credibility.  (*Id.*)  This allegation does not support a plausible
6    inference that Kasales, EPIQ, or deRubertis conspired against the SEC claim with opposing
7    counsel.  And there are no facts to support that the SEC used this information in its decision not to
8    prosecute Walmart or award Plaintiff a monetary award.

### 3.    Evidence Creation and Fabrication

10    In *Huynh I*, the district court ruled against Huynh based on a "mountain of evidence."
11    (*Huynh I*, Dkt. No. 167 at 3.)   Huynh states that this evidence was "bogus" and that Defendants
12    both (1) destroyed evidence of his meetings with Beal (where he blew the whistle on Walmart's
13    alleged fraud) and (2) manufactured evidence of his poor performance (including the excel RIF list
14    in his supervisor's email and the sexual harassment HR investigation).  (Dkt. No. 171 ¶¶ 200,
15    206.)  Plaintiff alleges that Walmart's e-discovery provider, defendant Lighthouse, as well as
16    Walmart's other counsel—dismissed defendant Payne & Fears—engaged in this evidence
17    destruction and creation alongside EPIQ and Kasales.  (*Id.* ¶¶ 166, 167, 187.)
18    The allegations in the FAC do not support a plausible inference that Defendants are liable
19    for the misconduct alleged.  Regarding EPIQ and Kasales, Plaintiff grounds his allegations in a
20    lengthy discussion of file extension titles for Microsoft Outlook.  (*Id.* ¶¶ 162, 189–192.)  In short,
21    Plaintiff alleges that Kasales did not use industry standard practices to process his laptop's data.
22    (*Id.*)  Plaintiff then states, "Even though both Kari and David [deRubertis] caused Von Lindern
23    and Kasales to generate these manipulated files (Epiq eDiscovery Solutions, Inc through their
24    employees not only Kasales and Lindern but other employees that worked on this project) they
25    eventually produced them to the Walmart and Gibson Dunn participants in late September 2018."
26    (*Id.* ¶ 192.)  The Court is unable to make a reasonable inference from those paragraphs that
27    Defendants destroyed evidence to further a conspiracy with Walmart and Gibson Dunn.
28    Likewise, the allegations against Lighthouse do not support an inference that Lighthouse or

17

the Gibson Dunn Defendants fabricated evidence. Plaintiff claims that the sexual harassment investigation report was fabricated and that Gibson Dunn attorneys caused a Walmart employee to support this fabricated evidence. (*Id.* ¶ 197.) His evidence for the fabrication is (1) that the investigator listed October 17, 2016 as the interview date when the interview occurred on October 18, 2016 and (2) that it was unlikely the report could have been completed on October 18 because the "way Corporate America Works is that even if [the investigator] did in fact completed [sic] the report on late at night on Oct 18 (not true), she had to run up the chain of command for feedback and approval before she could issue the complete report[.]" (*Id.*) Viewing these facts in the light most favorable to Plaintiff, these allegations are insufficient to warrant an inference that Defendants fabricated the investigative report—particularly where Plaintiff alleges that the HR interview did occur. (*Id.*)

In sum, Plaintiff's allegations of evidence destruction and fabrication are not entitled to a presumption of true because the factual allegations in the complaint do not support a plausible inference that Defendants engaged in the alleged wrongdoing.

### 4. Official Obstruction

Finally, Plaintiff alleges that the Gibson Dunn Defendants influenced a district court judge to rule against Plaintiff and to deny his motion for reconsideration. (*Id.* ¶¶ 217, 225.) That claim is wholly unsupported. The FAC provides no facts that would allow this Court to infer that Defendants are liable for the wrongdoing alleged.

### 5. Summary

In sum, Plaintiff has not made the kind of factual allegations that "nudg[e] their claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570. Specifically, Plaintiff's FAC does not provide sufficient facts to support his claims that (1) deRubertis conspired to leak his confidential information to Defendants; (2) Defendants' whitewashing efforts and credibility attacks caused the SEC to deny him an award; (3) Defendants fabricated and destroyed evidence in the SOX case; and (4) Defendants improperly influenced a district court judge. Because Plaintiff fails to submit sufficient facts to show that Defendants formed and enterprise and caused injury to his property through racketeering acts, his § 1962(c) claim fails.

### B. Plaintiff's RICO Conspiracy Claim Under § 1962(d) Fails

As discussed above, the FAC does not contain facts sufficient to allow the Court to reasonably infer that Defendants violated RICO. Because the underlying RICO claim fails, the RICO conspiracy claim also fails. *Howard*, 208 F.3d at 751.

## II. Plaintiff's Bivens Claim is Dismissed.

A *Bivens* claim provides a cause of action for private citizens to recover for injuries arising from the violation of their constitutional rights by federal officers. *Bivens v. Six Unknown Named Agents of Fed. Bureau Narcotics*, 403 U.S. 388, 397 (1971); *Carlson v. Green*, 446 U.S. 14, 18 (1980). Defendants are private actors, not federal officers. Plaintiff argues that Defendants acted under color of federal law because Defendants conspired with two federal judges. As discussed above, this allegation is a wholly unsupported legal conclusion. Because Plaintiff alleges a Bivens action against private actors, his complaint must be dismissed.

## III. Leave to Amend is Denied.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (cleaned up). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Before dismissing a civil complaint filed by a litigant without the assistance of counsel, the plaintiff should be given "notice of the deficiencies in his or her complaint" and be provided "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987).

"Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

Plaintiff has already amended the complaint once as a matter of right. (Dkt. No. 171.) The FAC and attached exhibits comprise nearly 1400 pages of documents. As discussed above, these voluminous allegations lack merit entirely. The RICO claims cannot be cured with further amendment. Likewise, Plaintiff's *Bivens* claims against private actors cannot be cured. Accordingly, the Court DENIES leave to amend and dismisses Plaintiff's claims with prejudice.

## CONCLUSION

For the reasons stated above, the motions for joinder are GRANTED. (Dkt. Nos. 213, 214, 220, 230, 232.) The Court GRANTS Defendants' motions to dismiss the FAC with prejudice. (Dkt. Nos. 211, 215, 217.) Dismissed defendant Matthew Boyle's motion to strike, (Dkt. No. 116), and the Walmart and Gibson Dunn Defendant's motion to dismiss the initial complaint, (Dkt. No. 138) are moot. The deRubertis defendants' motion to dismiss under Rule 12(b)(5), (Dkt. No. 100), was withdrawn by stipulation. (Dkt. No. 137.) Plaintiff's motion for service of process costs against David deRubertis is still pending. (Dkt. No. 202.) The Court retains jurisdiction to decide that motion.

**IT IS SO ORDERED.**

This Order disposes of Docket Nos. 100, 116, 137, 138, 211, 213, 215, 217, 214, 220, 230, 232.

Dated: August 4, 2022

JACQUELINE SCOTT CORLEY
United States District Judge